UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------

Christopher A. Roberts, sui juris

                              Plaintiff,

                  v.

Oneida Sheriff Deputy R. Fleury

Oneida Sheriff Deputy M. Aldoori

Oneida County Sheriff Robert M. Maciol

Oneida County Executive Anthony J. Picente Jr.

Sauquoit Valley Central School District
Superintendent Ronald Wheelock

Oneida County Director of Health Daniel W. Gilmore

Oneida County District Attorney Scott D. McNamara

Sauquoit Valley Central School District
Board of Education member Jim Dever

Sauquoit Valley Central School District
Board of Education member Ron Critelli

Sauquoit Valley Central School District
Board of Education member Dawn Miller

Sauquoit Valley Central School District
Board of Education member Anthony Nicotera

Sauquoit Valley Central School District
Board of Education member Todd Nelson

Oneida County

Civil case No. 6:22-CV-0918
(GLS/TWD)

**VERIFIED COMPLAINT**

**FOR PUNITIVE NOMINAL**

**AND MONETARY DAMAGES**

**TRIAL BY JURY DEMANDED**

U.S. DISTRICT COURT – N.D. OF N.Y.
FILED
SEP 0 6 2022
AT_____ O'CLOCK
John M. Domurad, Clerk - Utica

Roberts vs. Oneida County/Sauquoit School District, et al • 1 of 78

Oneida County Sheriff Department

Sauquoit Valley Central School District

                                        *Defendants.*

-------------------------------------------------------------------

"16 But whenever anyone turns to the Lord, the veil is taken away. 17 Now the Lord is

the Spirit, and where the Spirit of the Lord is, there is freedom. 18 And we all, who with

unveiled faces contemplate the Lord's glory, are being transformed into his image with

ever-increasing glory, which comes from the Lord, who is the Spirit." 2 Corinthians 3:16-

18


## COMPLAINT AND DEMAND FOR JURY TRIAL ON ALL COUNTS APPLICABLE

Plaintiff incorporates by reference the attached Exhibits with the same force and

effect as if herein set forth. Plaintiff Christopher A. Roberts hereafter known as Plaintiff,

seek redress for grievances against Defendants for Constitutional right violations which

incorporates both criminal and civil penalties. Pursuant to Rule 38(b) of the Federal

Rules of Civil Procedure and pursuant to Rule 38.1(a) of Local Rules of Practice for the

Northern District of New York. The Plaintiff hereby demands a jury trial of all issues so

triable.


## REQUEST FOR ALTERNATIVE SERVICE

Inasmuch as Defendants, though sued in their individual capacities, are public officials, Plaintiff requests leave of the court to allow service of all Defendants at their places of public employment. Plaintiff does not have the home address of any public official, and will not seek the same unless required to give personal service to said Defendants' homes.

## REQUEST OF GRAND JURY IMPANELMENT

Plaintiff respectfully requests that this court impanel a Grand Jury for the purpose of investigating the crimes uncovered in this matter.

## INTRODUCTION

This action arises out of the Defendant's conspiracy to deprive Plaintiff of inherent, sacred, and inviolable rights absent of due process. These rights include, but are not limited to, the exclusive enjoyment, use, and disposal of property exclusive to the Plaintiff. This inherent and sacred right incorporates both personal autonomy and to exercise religious beliefs independently of anyone else. Plaintiff will show that he was subjected to deprivation of his rights secured by the United States Constitution, under the color of law. Plaintiff will show that said deprivation of constitutionally secured rights

amounted to predicate acts, practiced and participated in, by all Defendants who are public servants, who exceeded their authority granted to them by the United States Constitution, the New York Constitution, and ultimately by We The People. Defendants failed to exercise objective reasonableness and violated the constitution and clearly established state and federal laws. Plaintiff will further show that the above referenced conspiracy amounted to a carefully crafted criminal enterprise, organized and orchestrated by Defendants toward the outcome of depriving Plaintiffs, and others similarly situated, of their constitutionally secured rights in order to secure millions of dollars in federal funding; and to seek publicity, favors, and political positions of power to the detriment of the Plaintiff and all similarly situated New Yorkers within the Oneida County and Sauquoit Valley Central School District boundaries.

Defendants required compliance for wearing an Emergency Use Authorized device to enter public Accommodations by using force, threat, duress, using law enforcement, and the local county health department to enforce said "orders" under color of state law and with the threat of fines, fees, and/or suspending access to public school accommodations without a lawful court order to do so.

This action arises out of the Defendants' conspiracy to deny equal enjoyment and access to places of public accommodation by color of state law, which is protected by Title II of the Civil Rights Act of 1964.

The causes of action brought are;

(1) Violation of Procedural Due Process 42 U.S.C. § 1983,

(2) Violation of 42 U.S.C. § 1985,

(3) Violation of Substantive Due Process,

(4) Violation of Equal protection clause of the U.S. Constitution 42 U.S.C. § 1983,

(5) Violation of the United States Constitution and corresponding separation of powers clause of the New York Constitution,

(6) Substantive Due Process and Violation of the Fifth, Ninth, and Fourteenth Amendments.

(7) Violation of Guarantee Clause and Due Process, Fifth and Fourteenth Amendments,

(8) Violation of Federal Preemption /Supremacy Clause,

(9) Title 42 U.S.C. § 1983 Civil Rights action for Deprivation of Rights,

(10) Common Law Negligence

(11) Common Law Conspiracy

(12) Infliction of Emotional Stress

(13) Fraud by Omission or Non-disclosure

(14) Title 42 U.S.C. § 2000A Prohibition Against Discrimination or Segregation in Places of Public Accommodations.

Roberts vs. Oneida County/Sauquoit School District, et al • 5 of 78

(15) Violation of First Amendment Religious Freedom

Plaintiffs ask the Court to convene a Federal Grand Jury to investigate the allegations set forth herein for what Plaintiff believes to be violations of federal law by all Defendants, incorporating title 18 U.S.C. § 241 and 18 U.S.C § 242. Proximate result by state action depriving Plaintiff of constitutionally protected rights and the concerted effort on the part of Defendants to violate Plaintiffs' constitutionally protected rights, absent of due process.

## JURISDICTION AND VENUE

1. The "judicial power [of the United States] shall extend to all Cases, in Law and Equity, arising under this Constitution, [and] the Laws of the United States".

2. This court has subject matter jurisdiction over Plaintiffs' 42 U.S.C. § 1983, 1985 and § 1988 claims pursuant to 28 U.S.C. § 1331 and § 1343(a)(3)(4). This Court has subject matter jurisdiction over the Plaintiffs state law claims pursuant to 28 U.S.C. § 1367.

3. Pursuant to 28 U.S.C. §2201 and §2202 this court has subject matter jurisdiction over Plaintiffs request for declaratory relief.

Roberts vs. Oneida County/Sauquoit School District, et al • 6 of 78

4. Venue is proper pursuant to 28 U.S.C. § 1391(b) because all of the acts and omissions giving rise to Plaintiffs' claims occurred in Oneida County in the State of New York and is thus within the United States District Court for Northern District of New York.

5. This action arises under 42 U.S.C. § 1983 (civil action for deprivation of rights), § 1985 (conspiracy to interfere with civil rights),  and § 1988 (proceedings in vindication of civil rights), to redress deprivations of Plaintiff's rights through acts and omissions that Defendants committed under color of law as willful participants in joint activity with the State and/or its agents.  This court has subject matter jurisdiction.

6.  Pursuant to Title II of the Civil Rights act of 1964, and Title 42 U.S.C. § 2000 (denial of service at places of public accommodation) this Court has subject matter jurisdiction.

7. Pursuant to Title 18 U.S.C. § 241 and § 242 this Court has subject matter jurisdiction.

8. The rules governing this action are, in order of superiority:

    a. The rules of the common law;

    b. The Federal Rules of Civil Procedure;

    c. The Northern District of New York Court Local Rules;

    d. The Federal Rules of Evidence;

9. Plaintiff is NOT a member of the B.A.R. Association and is not under oath or contract to strictly follow the rules of civil procedure. Furthermore, the courts have held that *action that is brought by sovereign individuals, in their sui juris capacity, is not to be held* to the same high standards as action brought by licensed attorneys. All that is required is that the pleading be in a format that "any reasonable person could understand" which this pleading conforms to.

10. This Court has Jurisdiction.

## PARTIES

11. Plaintiff, Christopher A. Roberts at all times relevant has been a resident of Oneida County, New York.  Plaintiff can receive Service of Process and related mailings for only this case at P.O. Box 34, Sauquoit, N.Y. 13456.

12. R. Fleury in his official capacity as an Oneida County Deputy working for the Oneida County Sheriff's Department in Oneida County at 6065 Judd Road, Oriskany, New York 13424. In his individual capacity as a resident of Oneida County. He was a security element at the Sauquoit Valley Central High School Board Meeting at 2601 Oneida Street, Sauqoit, N.Y. 13456.

13. M. Aldoori in his official capacity as an Oneida County Deputy working for the Oneida County Sheriff's Department at 6065 Judd Road, Oriskany, New York 13424. In his individual capacity as a resident of Oneida County acting as security element at the

Sauquoit Valley Central High School Board Meeting at 2601 Oneida Street, Sauquoit, N.Y. 13456.

14. Robert Maciol in his official capacity as the Sheriff of Oneida County and his office is located at 6065 Judd Road, Oriskany, New York 13424. In his capacity as a resident of Oneida County.

15. Defendant Anthony J. Picente, Jr. in his official capacity as is County Executive for Oneida County, N.Y. and his office is located at 800 Park Avenue #10, Utica, N.Y. 13501. In his capacity as a resident of Oneida County.

16. Defendant Ronald Wheelock in his official capacity as Superintendent of Sauquoit Valley Central School District and his office is located at 2601 Oneida Street, Sauquoit, N.Y. 13456. In his capacity as a resident of Oneida County.

17. Defendant Daniel W. Gilmore in his official capacity as Oneida County Director of Health and his office is located at 185 Genesee St # 500, Utica, NY 13501. In his capacity as a resident of Oneida County.

18. Defendant Scott D. McNamara in his official capacity as Oneida County District Attorney and his office is located at 235 Elizabeth Street Utica, New York 13501. In his capacity as a resident of Oneida County.

19. Defendant Jim Dever in his official capacity as Sauquoit Valley Central School Board Member and his office is located at 2601 Oneida Street, Sauquoit, N.Y. 13456. In his capacity as a resident of Oneida County.

20. Defendant Ron Critelli in his official capacity as Sauquoit Valley Central School

Board Member and his office is located at 2601 Oneida Street, Sauquoit, N.Y.

13456. In his capacity as a resident of Oneida County.

21. Defendant Dawn Miller in her official capacity as Sauquoit Valley Central School

Board Member and his office is located at 2601 Oneida Street, Sauquoit, N.Y. 13456. In

her capacity as a resident of Oneida County.

22. Defendant Anthony Nicotera in his official capacity as Sauquoit Valley Central

School Board Member and his office is located at 2601 Oneida Street, Sauquoit,

N.Y. 13456. In his capacity as a resident of Oneida County.

23. Defendant Todd Nelson in his official capacity as Sauquoit Valley Central School

Board Member and his office is located at 2601 Oneida Street, Sauquoit, N.Y. 13456. In

his capacity as a resident of Oneida County.

24. The Defendant, Oneida County and other interested Parties (Herein after Defendant or Defendants collectively) is a political subdivision of the "State" of New York, and can sue and be sued. At all times material to this lawsuit the principal place of business is located 800 Park Avenue #10, Utica, N.Y. 13501.

25. The Defendant, Oneida County Sheriff Department and other interested Parties (Herein after Defendant or Defendants collectively) is a political subdivision of the "State" of New York, Oneida County and can sue and be sued. At all times material to this lawsuit the principal place of business is located 6065 Judd Road, Oriskany, New York 13424.

26. The Defendant, Sauquoit Valley Central School District and other interested Parties (Herein after Defendant or Defendants collectively) is a political subdivision of the "State," Oneida County, Town of Paris, and can sue and be sued. At all times material to this lawsuit the principal place of business is located at 2601 Oneida Street, Sauquoit, N.Y. 13456.

27. At all times material to this lawsuit the two Oneida County Deputies and the School Superintendent, who acted in conspiracy for and created by Robert Maciol, Anthony Picente, and the Sauquoit Valley School District Board members who all are natural persons, and were employed by either Oneida County and/or Sauquoit Valley Central School District respectably.

28. All acts necessary or precedent to the bringing of this lawsuit occurred or accrued in Oneida County, New York.

## **PRELIMINARY STATEMENT**

29. Plaintiff Christopher A. Roberts alleges that the Defendants through negligence, ignorance, wanton disregard, improper training, or a combination of all four, worked together to chill and deter the substantive rights of the Plaintiffs through arbitrary and capricious means. Defendants relied upon the Oneida County corporate face mask policy/Sauquoit Valley Central School District Face Mask Policy and guidance issued from agencies such the Centers for Disease Control and Prevention, or the New York Department of Health Services to justify the chilling and deterring of the Plaintiffs' rights. At no time, did the advice or suggestions of these agencies have the authority of law or to supersede the Constitution of the United States or Federal Law.

30. Defendant R. Fleury and Defendant M. Aldoori as Oneida County Sheriff Deputies enforced the policy that caused Plaintiff's substantive rights to be violated.

31. Defendant Robert M Maciol, as the Oneida County Sheriff directed the deputies under his authority to enforce the County policy after being shown that his Face Mask policy was unlawful and violated Federal Law. Defendant Maciol had his deputies enforce a policy of negligence, ignorance, and discrimination against the Plaintiff.

32. Defendant Anthony J. Picente as the County Executive for the Oneida County acted on capricious and arbitrary recommendations, guidelines, and suggestions and enacted

an Executive Order/ Temprorary Health Order for the Face Mask Policy, that when enforced caused the deprivation of Plaintiff's substantive rights.

33. Defendant Ronald Wheelock, who had Authority to allow Plaintiff to enter the Sauquoit School without having Plaintiff's substantive rights violated, denied Plaintiff the right to enter a place of public accommodation. Defendant Wheelock tried coercing Plaintiff into an Emergency Use Authorized device as a stipulation to enjoy a right, entering into a public accommodation.

34. Defendant Daniel W. Gilmore who acting as Oneida County Director of Health signed the temporary health order that was used to deprive Plaintiff of his rights by Defendant Fleury. Defendant Gilmore signed the health order that violates Federal Law and led to the deprivation of Plaintiff's substantive rights.

35. Defendant Scott D. McNamara, who acting as the Oneida County District Attorney, failed to preform an administrative duty, when he failed to take or act on Plaintiff's Criminal Complaint against Defendant Wheelock for the crime of N.Y.C.L. penal law 135.6 coercion in the third degree.

36. Defendants Jim Dever, Ron Critelli, Dawn Miller, Anthony Nicotera, and Todd Nelson who acting as Sauquoit Valley Central School District Board members voted and enacted the face mask policy that Ronald Wheelock enforced to deprive Plaintiff of his rights and discriminate against Plaintiff at a place that is considered a public accommodation. These Defendants voted for a policy that violated Federal Law to receive federal funds.

37. The Defendants trespassed upon Plaintiffs rights, without due process of law, without probable cause and without a proper warrant, to deprive the Plaintiff of his rights.

38.  To make a civil infraction out of the use of, and the right to, access public school accommodations, is an arbitrary and capricious abuse of legislative discretion, without due process of law, such conduct is a direct assault on the Plaintiffs rights without consideration and in disregard of the facts.

39. On February 1, 2021, the Defendants did deny rights clearly belonging to Plaintiff, under the guise of enactment of Oneida County Health Orders and Sauquoit Valley Central School District Face Mask Policies, among others, without justification.

## GENERAL FACTUAL ALLEGATIONS

40. On August 17, 2021 Defendant Jim Dever, Ron Critelli, Dawn Miller, Anthony Nicotera, and Todd Nelson acting as Sauquoit Valley Central School District Board Members Attended the Sauquoit Valley Board of Education meeting called by Mrs. Miller at 7:02 p.m. at the Sauquoit Valley Central High School. During the meeting a roll call vote was taken for the adoption of Resolution 12 which included the policy of the face mask requirement for visitors to the Sauquoit Valley Central School High School. The mentioned Sauquoit Valley Board members all voted yes for the face mask policy. Exhibit A is page 8 and 9 from the Sauquoit Valley Central School District Board Minutes from the above mentioned meeting. This is located on The Sauquoit Valley Central School District Website at https://www.svcsd.org/site/handlers/filedownload.ashx?

Roberts vs. Oneida County/Sauquoit School District, et al • 14 of 78

moduleinstanceid=3584&dataid=6101&FileName=Approved%20August

%2017%202021%20Mintues.pdf


41. Exhibit B page 1 and 2 from a sumary of the Sauquoit Valley Central School District

Covid Reopening Plan for 2021-22 School Year. This could originally be found on the

Sauquoit Valley Central School District Website.


42. On December 9, 2021 Defendant Picente announced a temporary public health

order that required masks to be worn in all indoor public places and for temperature

checks to be conducted at social gatherings taking place outside of a private residence,

with an opt-out on the condition that only vaccinated people are allowed entry. Exhibit C

is a screen shot from the Oneida County Government website from December 9, 2021

announcing the order which went into effect at 7 a.m. on December 13, 2021.


43. Exhibit D is a copy of the public health order, it stated that" any individual who is

over the age of two (2) and able to medically tolerate a face-covering shall be required

to cover their nose and mouth with a mask or cloth face covering when indoors at a

public place. It also states, "For any venue subject to the mask and/or temperature

mandates in paragraph two (2) and three (3) above, the venue may instead choose to

admit only those individuals who are fully vaccinated and shall verify proof of same prior


Roberts vs. Oneida County/Sauquoit School District, et al • 15 of 78

to allowing admittance. Each attendee shall present their COVID-19 Vaccination Record Card or the Excelsior Pass for inspection by the venue.

44. The above Health order also states,"Any person who violates this Temporary Public Health Order may be subject to a civil penalty not to exceed $2000.00 for each violation pursuant to Public Health law  §12.

45. On January 24, 2022 at 11;13 P.M. Plaintiff sent Defendant Wheelock an email to his work email at rwheelock@svcsd.org. This email is marked Exhibit E. The Plaintiff in the email wrote, "nor is there ANY legal justification for a mask mandate in schools unless and until the State Legislature and Governor pass a LAW to that effect."

46. January 27, 2022, Mr. Roberts sent Exhibit F by email to Marie Goodman, the secretary for the Sauquoit Valley School District. This email was a request to speak at the school board meeting on February 1, 2022.

47. Plaintiff received an acknowledgment from Marie Goodman to speak at the school board meeting on February 1, 2022 prior to the date.

48. Plaintiff Entered the Waterville Standard Bakery at approximately 9:35 on January 28, 2002.

49. There was a sign on the door that asked those entering to please wear a mask.

50. Plaintiff noticed Three Oneida County Sheriff's through the window that were not wearing masks as he entered.

51. Upon entering Plaintiff noted that the Oneida County Sheriff was there, Defendant Robert M. Maciol. He was one of the Sheriff's the Plaintiff could see through the window not wearing a mask, initially.

52. Plaintiff watched as Peter Bianco hand delivered a three page Letter to the Sheriff.

53. The letter was written by Plaintiff and addressed to Defendant Maciol informing him to Cease and Desist with his illegal and unlawful Face Mask Policy.

54. This letter was also emailed to several people, Oneida County Assistant Kevin Revere, the Oneida County Attorney, Defendant Picente, and Defendant Wheelock.

Roberts vs. Oneida County/Sauquoit School District, et al • 17 of 78

55. See Attached Exhibit G for the letter addressed Defendant Maciol.

56. Plaintiff and Defendant Maciol had a conversation of the legality of enforcing a Face Mask policy on people who refused the Emergency Use Authorized device.

57. Plaintiff informed Defendant Maciol about 21 U.S.C 360 bbb-3 in writing and verbally that day.

58. During the conversation between Plaintiff and Defendant Maciol, Defendant tells Plaintiff that the policy to enforce wearing of face mask comes from the tenth floor, the County Executive, Defendant Picente.

59. Plaintiff leaves the Waterville Standard Bakery after informing Defendant Maciol that he would be conducting audits to verify this unlawful policy was no longer being enforced by the County Sheriff's Department.

60.  Defendant Wheelock, Sauquoit Valley Superintendent, Defendant Maciol, Oneida County Sheriff, Defendant Picente, Oneida County Executive were sent Exhibit H, an

Roberts vs. Oneida County/Sauquoit School District, et al • 18 of 78

email, on January 28, 2022 at 12:25p.m.. This email contained the attached PDF of the letter delivered to Defendant Maciol earlier that day, which is marked Exhibit G.

61. Plaintiff sent an email marked Exhibit I to Defendant Wheelock, Defendant Maciol, and Defendant Picente on January 28, 2022 at 2:50p.m.. The letter was to inform the Defendants that Plaintiff would be filing a suit if any of them decided to or instruct others to violate his rights.

62. Plaintiff prior to February 1, 2022 made more than ten phone calls to Defendants Picente's And Defendants Maciol's offices to inform them of their discrimination policy and how it violated Plaintiff's rights.

63. Plaintiff never received any communications from either Defendants Maciol, Picente, or Defendant Wheelock about the above issues with the unlawful Face Mask Policy being carried out by their subordinates.

64. Plaintiff made numerous attempts at contacting Defendant Picente and spoke with several secretaries from his office on various days to ask them for the Face Mask Policy in Writing. Plaintiff was always referred to the County Website and told that the Face Mask Policy is still in effect during all of Plaintiffs calls to his Oneida County Officials.

Roberts vs. Oneida County/Sauquoit School District, et al • 19 of 78

65. Plaintiff informed several County employees that the link on the County website for the County Face Mask Policy was broken.

66. Plaintiff entered the Sauquoit Valley High School at Approximately 6:30.p.m. on February 1, 2022. The Plaintiff was stopped feet inside the side entrance of the Sauquoit Valley High School by two armed masked individuals.

67. The two masked individuals that stopped Plantiff had name tags on. The two individuals name tags for the Oneida County Sheriff Department read M. Aldoori, and R. Fleury. Defendant Fleury said that because of the County Mandate that the Plaintiff couldn't enter the building unless he put a face mask on.

68. The Plaintiff told the two Oneida County Sheriff Deputies that he has the right to enter the building without putting on a face mask.

69. Defendant Wheelock approached Plaintiff and introduced himself. Defendant Wheelock told Plaintiff that it was policy that everyone attending the board meeting need to put on a face mask.

70. Defendant Wheelock told the Plaintiff that he did everything correctly to attend the board meeting and Plaintiff has the right to speak to the board.

71. Plaintiff reasserted he had a right to refuse the face mask and enter the building.

72. Defendant Wheelock told Plaintiff that the only way to attend the board meeting was by wearing an experimental medical device, a.k.a face mask.

73. Plaintiff left the school without being allowed to attend the school board meeting were he was scheduled to speak.

74. Exhibit J is a transcript from the above mentioned incident at the Sauquoit Valley Central High School where Plaintiff was deprived of his substantive rights.

75. Plaintiff sent an email on Febuary 1, 2022 at 7:23 p.m. to Defendants Maciol, Picente, McNamara, and Wheelock with an attached PDF. This email is marked Exhibit K. The attached PDF to Exhibit K is marked as Exhibit L. Exhibit L is a leter to Ronald Wheelock from Christopher Roberts.

76. Exhibit L is a letter addressed to Defendant Wheelock by the Plaintiff telling him how his schools policy violates Federal Law. The Plaintiff states,"Somehow either School Board Policy or Oneida County Mask Policy supersedes my unalienable rights from God. How is that?."

77. Plaintiff on February 3, 2022 at 12:57 P.M. sent Defendant McNamara an email with an attached PDF. The email is marked as Exhibit M and the PDF is marked Exhibit N. Exhibit N is a Criminal Complaint from Plaintiff against Defendant Wheelock. Defendant McNamara, nor anyone else from the Oneida County District Attorneys office has contacted Plaintiff about this Criminal Complaint.

78. Plaintiff on February 3, 2022 at 1:26 p.m. sent an email marked Exhibit O to Defendant Wheelock with an attached PDF marked Exhibit N. Exhibit N is a Criminal Complaint written by Plaintiff for the crimes committed against him by Defendant Wheelock.

79. Plaintiff sent an email to Defendant Maciol, Defendant Wheelock, Defendant McNamara, Defendant Picente on February 6, 2022 at 8:29 p.m. marked as Exhibit P . The Email contained an attached PDF, the letter was addressed to Defendant Picente and was a Notice to Cease and Desist, Notice Opportunity to Cure, and Notice of Claim. This attached letter is Exhibit Q.

80.  Exhibit R is an email sent from Marie Goodman, secretary for the Sauquoit Valley District Superintendent. This email states that masks are required to be worn in order to attend and speak at the upcoming board meeting on February 15, 2022.

81.  The Sauquoit Valley Central High School is a public entity that was open to the public at the time Plaintiff tried entering.

82. Plaintiff had an acknowledgment for his request to speak at the time he attempted to attend the School Board meeting.

83. Other people moved freely in and out of the building as long as they were wearing a Face Mask.

84.  Plaintiff's religion prevents him from wearing a mask.

85.  Plaintiff has a religious belief that the masks are part of a satanic ritual that he refuses to be apart of.

86.  Plaintiff has a religious belief that he cannot slowly commit suicide by lowering his immune system and depriving himself of oxygen.

87.  Plaintiff's body is his temple and no one can tell him what to do with it or what to put on it.

88.  Plaintiff's body is his private property.

89.  Plaintiff is not a 'public threat'.

90.  Plaintiff is a healthy man who takes personal responsibility for his heath condition and poses no health risks to anyone.

91. Plaintiff has never been proven to be a 'direct threat' as defined in 42 U.S. Code § 12111(3).

92. In the absence of due process of law, Defendants denied Plaintiff his first Amendment rights that prohibits government or State action interfering with or attempting to regulate any citizen's religious beliefs, coercing a citizen to affirm beliefs

Roberts vs. Oneida County/Sauquoit School District, et al • 24 of 78

repugnant to his religion or conscience, and by directly penalizing or discriminating against a citizen for holding beliefs contrary to those held by everyone else.

93. Plaintiff has received no responses to the above mentioned criminal complaint or Notice to Cease and Desist, Notice Opportunity to Cure, and Notice of Claim from anyone who it was sent to.

## DECLARATORY JUDGMENT AND FEDERAL QUESTION

94. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein and further alleges:

95. The Defendant Maciol, Defendant Picente, Defendant Wheelock where notified various times that the County Wide Face Mask Policy was unconstitutional and in violation of Federal Law.

96. The Oneida County Mask Mandate and Sauquoit Valley Central School Mask Policy are unconstitutional on its face as its enactment by both entities, the policies constitute a violation of Plaintiffs inviolable exclusive, inherent, and inalienable right to possess, enjoy, use, and dispose of property, which includes but is not limited, personal autonomy and freedom of conscience. The order restricting these fundamental rights

Roberts vs. Oneida County/Sauquoit School District, et al • 25 of 78

must be narrowly tailored to a compelling state interest, as necessitated by the required strict scrutiny rule. State sponsored restriction of fundamental rights must eliminate the evil to which it purports to protect the public from.

97. Directly or indirectly, all the Defendants acted in a concerted conspiracy with the unconstitutional policy of demanding everyone put a face mask on before entering into a public accommodation. The Oneida County Public Health Order was the policy put out by Defendant Picente and Gilmore, which was disseminated to Defendant Maciol who had the deputies under his authority enforce the policy. Defendant Wheelock was carrying out the policy voted for by the Sauquoit School Board Members, Defendants Jim Dever, Ron Critelli, Dawn Miller, Anthony Nicotera, and Todd Nelson, and enacted as policy that applied to all visitors to the Sauquoit Valley Central High School.

98. Defendants Maciol, Picente, and Wheelock were made aware of 21 U.S.C. 360 bbb-3 prior to the incident at the Sauquoit Valley Central High School on February 1, 2022. Plaintiff had the right to refuse the experimental medical intervention as a stipulation for being able to access his rights to assemble, right of free speech, the right of religious expression, and right to due process.

99. Even the Oneida County Attorney was notified of  21 U.S.C. 360 bbb-3  and the Face Mask policy still remained in affect both at County Operated Buildings and various School Districts throughout Oneida County until later on in February of 2022.

100. Defendants Maciol, Picente, and Wheelock have failed to respond to any communications regarding their policy/mandate/requirement/public health order.

101. **First Federal Question:** When in course of entering a public accommodation can a stipulation to entering require you to take part in an experimental medical intervention?   Plaintiff contends usage of EAU device cannot be a prerequisite to entering a place of public accommodation.

102. Therefore, the Plaintiff is entitled to injunctive relief against Defendants, to enjoin Defendants from enforcing un-constitutional actions against the Plaintiff.

103. **Second Federal Question:** When a political subdivision, Oneida County created by New York State, deters, and deprives the constitutionally secured substantive rights of citizens by a Mandate or Policy or Public Health Order, do the Plaintiffs lose their Constitutionally secured substantive rights? Plaintiff contends, no.

104. **Third Federal Question:** Can the advice, guidelines, recommendations, and encouragement from corporate, federal, and state agencies such as the Centers for Disease Control and Prevention, New York State Department of Health Services, or Upstate Medical University supersede the United States Constitution which incorporates substantive and procedural due process? Plaintiff contends, no.

105. **Fourth Federal Question:** Must the Plaintiff comply with directives, edicts, ordinances, mandates, policies or suggestions that violate constitutionally secured rights absent of due process? Plaintiff contends, no.

106. Therefore, the Plaintiff is entitled to injunctive relief against Defendants, to enjoin Defendant from enforcing un-constitutional actions against the Plaintiff.

107. **WHEREFORE** Plaintiff demands judgment for declaratory and injunctive relief against Oneida County and Sauquoit Valley Central School and their corporate subdivisions, together with such other relief as the Court may deem reasonable and just under the circumstances.

## CLAIMS FOR RELIEF

## COUNT ONE

## VIOLATION OF PROCEDURAL DUE PROCESS

## 42 U.S.C. § 1983

108. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein and further alleges:

109. Defendants have labeled Plaintiff as communicable disease threat without a medical license and without medical basis and as a result coerced Plaintiff to wear a mask, that is underneath Emergency Use Authorization as a prerequisite to entering a public accommodation.

110. At all times relevant herein, the Plaintiff had a right under due process and equal protection clauses of the state and federal constitutions not to be deprived of his constitutionally protected interest in property and exercise of religious liberty. U.S. Const. Amend. 14; and New York Const. Art. 1, Section 3.

111. At all relevant times herein, the Defendants were state actors, and their conduct was subject to 42 U.S.C. §§§ 1983, 1985, and 1988. Furthermore, Defendants have a duty and obligation to protect the rights and privileges of the citizens they serve

Roberts vs. Oneida County/Sauquoit School District, et al • 29 of 78

pursuant to the oaths of office each of them took to uphold and defend the United States Constitution and the New York Constitution.

112. "Private persons, jointly engaged with state officials in the challenged action, are acting 'under color' of law for purposes of Section 1983 actions." Dennis v. Sparks. 449 U.S. 24, 27-28 (1980).

113. Acting under the color of law by issuing 'public health orders' and 'mandates' and 'policies', Defendants worked to deny Plaintiff of his rights, privileges, or immunities secured by the United States Constitution or by Federal and State law and guaranteed by the First, Fourth, Ninth, Thirteenth, and Fourteenth Amendments to the Constitution of the United States. Defendants sought and got compliance to their orders based on their misrepresentations. Defendants should have known, or should have reasonably believed, that their 'public health orders' and 'mandates'  and 'policies' issued under the color of law would violate the constitutionally protected rights of Plaintiff and others similarly situated.

114. Acting under the color of law, the Oneida County Mask Mandate and Sauquoit Valley Central School Mask Policy, Defendants worked in concert to deny Plaintiffs' rights, privileges, or immunities secured by federal law and guaranteed by the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States.

Roberts vs. Oneida County/Sauquoit School District, et al • 30 of 78

115. As a direct result of Defendants concerted, unlawful, and malicious conduct,

Plaintiff was deprived of his rights to equal protection under the law, due process of law,

his inviolable right to personal autonomy, and right to property, in violation of the Fourth,

Fifth, and Fourteenth Amendments to the Constitution of the United States and 42

U.S.C. § 1983.


116. Defendants Oneida County, Oneida County Sheriff department, and the Sauquoit

Valley Central School thereof are responsible for establishing policy, procedure,

mandates, and customs complained about herein under color of law.


117. Defendants Oneida County, Oneida County Sheriff Department, the Sauquoit

Valley Central School, and any subsidiaries thereof, had an obligation and duty to

Plaintiff to properly train and supervise all employees, officers, or contractors under their

purview about discriminatory practices that are unlawful.


118. These actions and omissions by the Defendants the Oneida County and the

Sauquoit Valley Central School, through their various agencies and policy making

officials, demonstrates a callous indifference to the rights of the Plaintiffs and other

individuals who have been harmed by these 'policies;' and such consequence is

reasonably foreseeable by the Defendants Oneida County, Oneida County Sheriffs Department, and the Sauquoit Valley Central School. Such failure to train, supervise, and later to investigate and discipline the agents involved reflects a deliberate and conscious indifference to the rights of others by the Defendants.

119. Defendants knew or should've known their duty and obligations as reasonable men, women, and to know the consequences of depriving Plaintiffs of Constitutionally secured rights when in breach of that duty.

120. Defendants directly or indirectly worked in concert to deprive Plaintiff of inherent constitutionally protected rights, which has been emotionally traumatizing to mind, body, and soul of the Plaintiff.

121. The rule is well settled, however, that if the natural consequences of the wrongful act, done willfully or with gross negligence, is mental suffering to the Plaintiff, then that element may be considered in assessing the damages.

122. As a result of Plaintiff refusing to consent to an unwanted medical procedure by an unlicensed individual, Plaintiff was refused service and refused entry to the Sauquoit Valley Central High School.

123. Defendants have discriminated against Plaintiff because of their perceived ability acting as agents of the State.

124. Defendants are public servants and failed to exercise objective reasonableness and in so doing violated the constitution and clearly established state and federal laws, namely Title 18  U.S.C. § 241 and  § 242.

125. The due process clause of the Fourteenth Amendment requires that action by a state through any of its agencies must be consistent with the fundamentals of liberty and justice.

126. Procedural due process of law is required to properly classify Plaintiffs with an actual communicable disease disability by a licensed physician, verified by a health officer, challenged and/or investigated through a hearing followed by discussion of appropriate intervention.

127. There is a very high threshold that must be met to label someone as a real contagious threat that involves the right of the accused to challenge that assessment.

128. New York Public Health Law § 2120 outlines the process to process to determine if an individual is a communicable disease threat.

129. None of the processes outlined in NY PHL § 2120 are authorized to be performed by any of the Defendants as they are wholly unqualified to determine if someone is disabled and an actual public health threat.

130. As a direct result of Defendant's actions, Plaintiff was harmed and has suffered the loss of confidence in and feelings of betrayal by the Sauquoit Valley Central School District, shock, and emotional scarring, all can be compensated as emotional distress, and other damages.

131. The rule is well settled, however, that if the natural consequence of the wrongful act, done willfully or with gross negligence, is mental suffering to the Plaintiff, then that element may be considered in assessing damages. Stiles, 233 Mass. at 185, cites omitted. "Good faith and absence of malice in the perpetration of such a palpable wrong to the Plaintiff constitute no defense to the Defendants against the almost inevitable effect of their acts." Id.

132. Defendants Maciol, Picente, and Wheelock were presented with the law 21 U.S.C

360 bbb-3 and consequently asked how can their policy or order not violate the law,,

prior to the incident on February 1, 2022. None of the Defendants gave a response to

any communication to them.

133. **WHEREFORE,** Plaintiffs demand judgment for the violation of his civil rights

against all Defendants jointly and severally for actual, general, special, punitive, and

compensatory damages in the amount of $5,000,000.00 U.S. dollars and further

demand judgment against all Defendants, jointly and severally for punitive damages in

an amount to be determined by the jury, plus the cost of this action, including assistance

of counsel/attorney's fees, and such other relief deemed to be just, fair, and appropriate.

134. "Punitive damages are recoverable in sec. 1983 suit where Defendant's conduct is

motivated by an evil motive or intent, or where it involves reckless or callous

indifference to Plaintiff's federally protected rights." Smith v. Wade, 461 U.S. 30, 50-51

((1983); Clark v. Taylor, 710 F.2d 4, 14 (1st Cir. 1983). Miga, supra at 355.

## COUNT TWO

### VIOLATION OF 42 USC § 1985

135. Plaintiff re-alleges, restates, and incorporates by reference the allegations in the foregoing jurisdictional, and factual allegations.

136. The conspiratorial purpose was financial.

137. On or around August 17, 2021, the first step in the conspiracy was taken when the Sauquoit Valley Central School Board of Education met to draft their plan for the reopening of Sauquoit Valley School District in order to be in compliance with the New York State ARP ESSER FUND Plan funding requirements, at the detriment of Sauquoit Valley Central School District students and Plaintiff.  This ARP ESSER FUND required certain measures to be in place in order for Defendants to receive the funding tied to this plan.

138. In the document "American Rescue Plan Act Elementary and Secondary School Emergency Relief Fund" A Rule by the Education Department on 04/22/2021, in footnote 14 it states "As described above, **each plan must address: Universal and correct wearing of masks;**"

139. This document can be found in the Federal Register at https://www.federalregister.gov/documents/2021/04/22/2021-08359/american-rescue-plan-act-elementary-and-secondary-school-emergency-relief-fund and is Exhibit S.

140. Within the "NEW YORK STATE EDUCATION DEPARTMENT AMERICAN RESCUE PLAN (ARP)" submitted JUNE 7, 2021 first revision JUNE 30, 2021 second revision JULY 13, 2021 on page 29 it states, "Below is a summary of NYSED's response to mitigation strategies (listed as Table 4 in the ARP ESSER plan instructions). This is marked as Exhibit T. Table 4: is titled "NYSED Prevention and Mitigation Policies to Support the Implementation of CDC Guidance."

141. The Mitigation Strategy of Universal and correct wearing of masks is paired with NYSED's response which states "NYSED Office of Student Support Services released its Reopening Guidance in July 2020, which provides guidelines on mask wearing"

142. In the reopening Guidance in July 2020, on page 36, it states "All individuals in school facilities and on school grounds must be prepared to put on a face covering if another person unexpectedly cannot socially distance. All students and staff members must wear cloth face coverings: Whenever they are within 6 feet of someone;  In hallways; In restrooms; and In other congregate settings, including buses." This is marked as Exhibit U.

143. By misrepresenting the details of the "Sauquoit Valley Central School District Reopening Plan" as having the safety and well-being of the students as the motivation for this plan, Defendants defrauded Plaintiff of his right to practice his religion as he saw

Roberts vs. Oneida County/Sauquoit School District, et al • 37 of 78

fit, the right to freely assemble, the right to be secure in their persons and papers, his right to refuse unwanted medical treatment, his right to access public school accommodations, his right to not be forced into involuntary servitude, and his right to due process and equal protections under the law as Defendants motives were purely financial and not health related as they claimed.

144. Requirements of the New York ARP ESSER FUND Plan stated that

LEAs must make any necessary updates to existing plans to conform with the USDE requirements within 30 days of receipt of ARP-ESSER funds and to review (and revise if appropriate) plans every six months thereafter (until September 30, 2023). One of the ARP Act requirements states that LEA's plan must include how it will maintain the health and safety of students, educators, and other school and LEA staff and a description of any policies it has adopted regarding each of the CDC's safety recommendations, including universal and correct wearing of masks.  This information can be found on a letter from Phyllis D. Morris, Chief Financial Officer of The State Education Department of New York to school district superintendents dated May 19, 2021.

This is marked as Exhibit V.

145.  Certain measures, i.e. 'mitigation efforts' aimed at 'stopping the spread' of this alleged new 'virus', had to be in place and practiced by local school authorities in order for the Defendants to receive millions in federal funding that was offered to them under the guise of 'mitigation efforts'.

146. Defendant's motivations were purely financial and no input from Plaintiff or Sauquoit Valley Central School District parents similarly situated was taken into consideration.

147. The scheme of this conspiracy was (1) to disguise the reason for these 'mitigation efforts' as concern for the students' health and safety, (2) implement said measures to the detriment of Plaintiff and all other Sauquoit Valley Central School District students, and (3) misrepresent that these measures were having any impact when in reality these measures were in place in order to secure millions of dollars from the federal government.

148. There was no data nor physical or tangible proof given, to show that these "mitigation efforts" had any effect in 'slowing the spread' of the alleged new 'virus', yet Defendants continued to force these measures on Plaintiff and all of the other Sauquoit Valley Central School District students. 'Slowing the spread' are words of ambiguity and extremely vague. One cannot justifiably say how 'slowing the spread' is measured outside of a laboratory or a controlled environment.

149. Defendants stood to profit financially from intentionally withholding the underlying reasons these measures were implemented in Sauquoit Valley School District schools.

150. The above acts were some of the steps in the conspiracy to commit fraud, if not larceny, with the requisite mens rea upon Plaintiff.

151. Defendants are public servants and failed to exercise objective reasonableness and in so doing violated the constitution and clearly established state and federal laws, namely Title 18 § U.S.C. 241 and 242.

152. The Defendants intentionally interfered with Plaintiff exercise and enjoyment of his clearly established rights secured by the state and federal constitutions and/or laws of the United States and/or the State of New York, and thereby deprived Plaintiff of those rights and caused his injury.

153. As a result of the concerted, unlawful, and malicious conspiracy of all the Defendants, Plaintiff was deprived of his rights to freedom of religion, freedom of speech, right to be secure in their persons and papers, right to access public school accommodations, and both due process and the equal protection of the laws in violation

of the First, Fourth, Ninth, Thirteenth, and Fourteenth Amendments of the Constitution of the United States and 42 U.S.C. secs. 1983 and 1985.

154. Plaintiff believes the conspiratorial purpose for the "County Mandate" was also financial and based on Federal/State Funds and by extension the men and women acting as employees for the Oneida County Sheriff Department having the authority to deny service and to deprive the Plaintiff equal enjoyment, use, and access to a place of public accommodation.

155. Defendant Fleurly boldly proclaimed "are you aware it is still a county mandate."

156. Defendants knew or should've known that the constitution and laws of the United States are the controlling authority, and any mandate is subject to the limitations of Federal law and this constitution.

157. Plaintiff, as a citizen, at a public school, Sauquoit Valley Central High School was denied service at a place of public accommodation as enumerated in Title II of the Civil Rights Act of 1964.

158. Defendants recklessly and callously imposed upon Plaintiff that their County/School Policies for individuals held rights above that of the Plaintiff's.

159. As a result, the Defendants acting in concert conspired to deprive the Plaintiff of the equal protection, equal privileges, and immunities as guaranteed by the constitution and laws of the United States and the State of New York.

160. Defendants negligently and egregiously denied Plaintiff his constitutionally protected rights of property and freedom of conscience.

161. Statements by some courts indicate constitutional protection for rights termed "natural," in addition to rights protected under the specific guarantee safeguarding a person in life, liberty, or pursuit of happiness, such as a natural right of personal autonomy. Am. Jur. Const. 2d Law §403.

162. The Defendants working for the Oneida County and Sauquoit Valley Central School operating in commerce per se, directly and indirectly conspired to deprive Plaintiff the equal enjoyment, access, and use of a public accommodation, as protected in title II of the Civil Rights Act of 1964 (title 42 U.S.C. §2000).

163. To state a claim under § 1985(3) a Plaintiff must allege the existence of (1) a conspiracy, (2) a conspiratorial purpose to deprive a person or class of persons, directly or indirectly, of the equal protection of the laws or of equal privileges and immunities under the laws, (3) an overt act in furtherance of the conspiracy, and (4) either (a) an injury to person or property, or (b) a deprivation of a constitutionally protected right or privilege.

164. **WHEREFORE,** Plaintiff demands judgment for the violation of their civil rights against all Defendants jointly and severally for actual, general, special, and compensatory damages in the amount of $500,000.00 U.S. dollars and further demand judgment against all Defendants jointly and severally for punitive damages in an amount to be determined by the jury, plus the cost of this action, including assistance of counsel/attorney's fees, and such other relief deemed to be just, fair, and appropriate.

## COUNT THREE

## VIOLATION OF SUBSTANTIVE DUE PROCESS

## 42 U.S.C. § 1983

165. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein and further alleges:

166. Plaintiff has a protected liberty interest, secured by the Due Process Clause of the United States Constitution, international protocols and treaties adopted by and entered into by the United States, and by the laws and regulations of the United States, to be free from burdens on his constitutionally protected rights.

167. A requirement to wear a mask violates several fundamental rights, including but not limited to the right to be free from forced medical experimentation.

168. This right is both a fundamental right and pursuant to United States Supreme Court jurisprudence.

169. As set forth more fully subsequently, the forced administration of an untested and ineffective medical intervention is criminal in nature.

170. Plaintiff has a protected liberty interest, secured by the Due Process Clause of the United States Constitution, to refuse non-consensual administration of any

objectionable medical product, and/or to be free from the forced administration of medical procedures and devices that Plaintiff reasonably believes may cause him harm.

171. This is underscored by the fact that the Defendant coercing the non-consensual intervention is an unlicensed medical professional.

172. Further, Plaintiff has a fundamental right, secured by the Due Process Clause of the Fourteenth Amendment of the United States Constitution:

(1). to breathe fresh air;

(2) to self-determination in matters of medical care and the administration of medical products and devices;

(3) to medical privacy; and

(4) pursuant to the First and Fourteenth Amendment, the right to be left alone, personal privacy, and the right to bodily autonomy.

173. **WHEREFORE**, Plaintiff respectfully requests that the Court enter punitive and monetary damages and such further relief as the Court deems just that Defendants' actions under color of law through mask coercion violates Plaintiff's substantive Due Process rights.

Roberts vs. Oneida County/Sauquoit School District, et al • 45 of 78

## COUNT FOUR

## VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH

## AMENDMENT TO THE U.S. CONSTITUTION

## 42 U.S.C. § 1983

174. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein and further alleges:

175. By his actions, as described herein, Defendant, acting under color of statute, ordinance, regulation, custom, or usage, subjected Plaintiff to the deprivation of the rights, privileges, or immunities secured by the Constitution and law.

176. Defendant's mask coercion violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution (and corresponding provision of the New York State Constitution) because it forces non consenting healthy people into the use of a medical product and face burdens to their medical privacy and ability to breathe, but it allows similarly situated healthy people in the same businesses and locations to be obtain service because they have submitted to a medical procedure, by an unlicensed

Roberts vs. Oneida County/Sauquoit School District, et al • 46 of 78

professional, which is unable to provide any protection against infections whatsoever not to mention the lack proof of a virus being isolated/purified from a human sample anywhere in the World at this time.

177.  There is no rational basis for such a distinction as previously outlined.  Plaintiff poses no more danger to others than a person who are consenting to an ineffective medical treatment.  It is a fact that masked people are equally or even more infectious than unmasked individuals.  The policy of discriminating based on an individual's willingness or ability to subject themselves to ineffective medical intervention by an unlicensed person, restrict their breathing, sacrifice bodily autonomy and facilitate possible harm due to increased $CO_2$ levels, breathing through covering made of toxic materials, and fine particulate debris introduced into the lungs due to mask friability cannot be justified as relating to any rational permissible goal.  It is not grounded in science, but rather in the effort to coerce people into waiving their right to freely opt out of harmful, reckless and unjustified medical intervention.

178. **WHEREFORE**, Plaintiff respectfully requests that the Court enter punitive and monetary damages and such further relief as the Court deems just that Defendant's mask coercion violates Plaintiff's Equal Protection rights.

## COUNT FIVE

Roberts vs. Oneida County/Sauquoit School District, et al • 47 of 78

**VIOLATION OF THE UNITED STATES**

**CONSTITUTION AND CORRESPONDING SEPARATION OF POWERS**

**CLAUSE OF THE NEW YORK CONSTITUTION**

179. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein and further alleges:

180. Only the legislature can make laws. Further, the legislature cannot delegate this lawmaking authority according to Article 3, Section 13 of the New York State Constitution.

181. The United States Constitution establishes three separate but equal branches of government: the legislative branch makes the laws, the executive branch enforces the laws, and the judicial branch interprets the laws. The Framers structured the government in this way to prevent one branch of government from becoming too powerful and to create a system of checks and balances.

182. The Constitution of the State of New York similarly requires that statutes be passed by each separate house of the New York legislature before they can have the force of law.

Roberts vs. Oneida County/Sauquoit School District, et al • 48 of 78

183. Specifically, Article III, Section 13 of the Constitution of the State of New York provides that "The enacting clause of all bills shall be 'The People of the State of New York represented in Senate and Assembly, do enact as follows,' and no law shall be enacted except by bill."

184. The current perceived Mask Policy, issued by the Oneida County Health Order unbalances this constitutional framework by allowing the executive branch to issue directives with the force of law without proper delegation from the legislature.

185. Plaintiff also has a clear legal right to: breathe freely and opt out of participating in Non consensual medical intervention, to medical privacy, to refuse medical interventions that he reasonably believes may cause him harm, and to bodily autonomy.

186.  **WHEREFORE**, Plaintiff respectfully requests that the Court enter punitive and monetary damages and such further relief as the Court deems just that Defendants' actions under color of law through a mask coercion violates Plaintiff's constitutional rights.

## COUNT SIX

Roberts vs. Oneida County/Sauquoit School District, et al • 49 of 78

## SUBSTANTIVE DUE PROCESS AND VIOLATION OF THE FIFTH, NINTH AND FOURTEENTH AMENDMENTS

187. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein and further alleges:

188. Both substantive due process under the Fifth and Fourteenth Amendments and the Ninth Amendment protect fundamental rights not specified in the remainder of the Bill of Rights, which the government may not violate.

189. Requiring healthy children to wear masks six hours a day, five days a week, ten months a year and indefinitely, and for the first time we are aware of in recorded history, without clear scientific proof that such an unprecedented mandate provides the children themselves with a net health benefit, violates substantive due process and the unenumerated natural rights protected by the Ninth Amendment.

190. The face mask policy at the Sauquoit Valley Central School District is mandated by the superintendent, Ronald Wheelock. This policy effects not just the children attending but guests that visit the school.

191. **WHEREFORE,** Plaintiff respectfully requests that the Court enter punitive and monetary damages and such further relief as the Court deems just that Defendants' actions under color of law through a mask coercion violates Plaintiff's substantive Due Process rights.

## COUNT SEVEN

## VIOLATION OF GUARANTEE CLAUSE AND DUE PROCESS, FIFTH AND FOURTEENTH AMENDMENTS

192. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein and further alleges:

193. All of the mask mandates complained of were issued by executive decree and without Legislation. Rule by decree is the hallmark of dictatorship and antithetical to democracy. An unprecedented and drastic intervention into the lives of our young people must come, if at all, from the legislative branch of whichever level of government seeks to issue it.

194. Though Defendants will no doubt claim that we are in a state of emergency, the state legislature, the school boards and county legislatures are still meeting and are able to consider such proposals.

195. Two separate and district provisions in the Constitution protect the right of the people not to be subject to arbitrary decrees issued without the significant procedural and political protections provided by the legislative process, the guarantee of republican government and substantive due process.

196. The Guarantee Clause states: "The United States shall guarantee to every State in this Union a Republican Form of Government." Article IV. James Madison, the chief framer of the Guarantee Clause, defined a republic as follows in Federalist No. 39: "[W]e may define a republic to be, or at least may bestow that name on, a government which derives all its powers directly or indirectly from the great body of the people, and is administered by persons holding their offices during pleasure, for a limited period, or during good behavior."

197. Thus, the people, who are sovereign, delegate certain powers to the government by ratifying constitutions and the government may not exercise any greater powers, lest they cease being a republic.

198. In addition to limiting the government to the powers delegated to it by the people in the constitution, Madison also held that separation of powers is essential to republican government: "The accumulation of all powers, legislative, executive, and judiciary, in the same hands, whether of one, a few, or many, and whether hereditary, self-appointed, or elective, may justly be pronounced the very definition of tyranny." Federalist No. 4 7.

199. The people of the State of New York delegated the legislative power to the Legislature only.

200. The Legislature's delegation to the executive branch of the power to issue directives exceeds that delegation and also destroys the separation of powers and thus violates the Guarantee Clause.

201. Due process has many familiar elements such as notice, an opportunity to be heard and an impartial tribunal. There is, however, another essential element of due process that is more obscure because it rarely needs to be invoked: jurisdiction to issue lawful orders.

202. 12 "The fundamental liberties protected by the Due Process Clause of the Fourteenth Amendment include most of the rights enumerated in the Bill of Rights, and in addition, these liberties extend to certain personal choices central to individual dignity and autonomy, including intimate choices that define personal identity and beliefs.13 A state's obligations under the 14th Amendment are not simply generalized ones; rather, the state owes to each individual that process which, in light of the values of a free society, can be characterized as due. 14 In evaluating a due-process claim, a court must determine whether a property or liberty interest exists and, if so, what procedures are constitutionally required to protect that right. 15 "16B Am. Jur. 2d Constitutional Law §938.

203. The Legislature may not delegate its lawmaking powers to the executive branch since that power was not delegated to the Legislature by the People. The People retain that power, subject to a future amendment of the state constitution (which has exactly zero chance of being ratified). Thus, the executive orders as complained of herein, were void ab initio, have no force of law and should be enjoined by this Court.

204. **WHEREFORE,** Plaintiff respectfully requests that the Court enter punitive and monetary damages and such further relief as the Court deems just that Defendants' actions under color of law through a mask coercion violates Plaintiff's substantive Due Process rights.

**COUNT  EIGHT**

**VIOLATION OF FEDERAL**

**PREEMPTION/SUPREMACY CLAUSE**

205. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein and further alleges:

206. Masks are regulated by the FDA when used for a medical purpose such as preventing the spread of communicable disease.

207. None of the currently available face coverings for viruses (ie. surgical and cloth masks), other than NIOSH- approved N95 particulate filtering face-piece respirators (when used in specific settings), is approved or licensed by the federal government; they are authorized under Emergency Use Authorization only and may not be mandated.

Roberts vs. Oneida County/Sauquoit School District, et al • 55 of 78

208. None of the currently available face coverings for communicable diseases (ie. surgical and cloth masks), other than certain NIOSH- approved N95 particulate filtering face-piece respirators (when used in specific settings), have received final approval from the FDA as having been adequately tested to establish safety or effectiveness.

209.  Rather, surgical and cloth masks are unapproved products that have been authorized only for emergency use.

210.  In fact, the FDA defines them as such and has labeled masks as experimental devices requiring, inter alia, that the person using the unapproved experimental device be advised of his or her right to refuse administration of the product. See 21 U.S.C. § 360bbb-3(e)(1)(A) ("Section 360bbb-3").

211. Further,  21 U.S.C. § 360bbb-3(e)(1)(A) ("Section 360bbb-3") states that the product must not be labeled in such a manner that would misrepresent the product's intended use; for example, the labeling must not state or imply that the product is intended for antimicrobial or antiviral protection or related uses or is for use such as infection prevention or reduction.

212.  The Oneida County Health Order and Sauquoit Valley Central School District Mask Policy not only misleads the public by implying that masks can be used for antiviral protection and to stop the spread of viruses, but conflicts with the terms of the Emergency Use Authorization and is preempted under the Supremacy Clause.

213.  Scientific consensus on the short-term and long-term medical and psychological impact on the public from large scale forced prolonged use of face coverings does not exist.

214. It is by now well-settled that medical experiments, better known in modern parlance as clinical research, may not be performed on human subjects without the prior, free, and informed consent of the individual.

215. Federal laws and regulations governing the approval and administration of medical products such as vaccines or masks completely preempt any and all contrary or inconsistent laws of the States and/or local governments.

216. Both the Oneida County Health Order and Sauquoit Valley Central School District Mask Policy is patently contrary to United States law, and thus preempted and invalid.

217. Title 21 United States Code, Section 360bbb-3(e)(1)(A)(ii), and regulations and internal protocols of the United States Food and Drug Administration promulgated thereunder, provide in relevant part that all individuals to whom an investigational product is to be administered under an Emergency Use Authorization be informed "of the option to accept or refuse administration of the product."

218. Because the masks in this mandate are investigational products, only permitted for use under an Emergency Use Authorization, the laws and regulations of the United States prohibit state and local governments from requiring them for any person who does not consent to their administration, including Plaintiff.

219. Plaintiff does not consent to being required to wear masks.

220. Title 21, Part 50 of the Code of Federal Regulations governs the protection of human subjects in the conduct of all clinical investigations regulated by the U.S. Food and Drug Administration.

221.  21 C.F.R. § 50.20 provides that, "[e]xcept as provided in §§ 50.23 and 50.24, no investigator may involve a human being as a subject in research covered by these

regulations unless the investigator has obtained the legally effective informed consent of the subject or the subject's legally authorized representative."

222. Under Emergency Use Authorization, the mask remains in the clinical investigation stage.

223. Accordingly, the Oneida County Health Order and Sauquoit Valley Central School District Mask Policy also violates federal law and regulations governing the administration of experimental medicine and is thus preempted.

224. Defendants' mask mandates violate parents 'right to protect their children from an unhealthy, dangerous, ineffective learning environment and forced medical experiments.

225. As a direct result of the Defendants 'conduct, the Plaintiff has suffered actual damages, attorneys' fees, and costs.

226. Coercion violates Plaintiff's Equal Protection rights.

227. **WHEREFORE,** the Plaintiff respectfully requests that the Court assume jurisdiction of this action. Enter judgment against the Defendants and in favor of the Plaintiff, enter a declaratory judgment that any and all of the Defendants 'mask mandates/policies/customs are unconstitutional and in violation of the First, Fourth, Fifth, Ninth, and Fourteenth Amendments to the United States Constitution, Guarantee Clause and other federal laws and regulations, and that all such orders are unconstitutional, null and void. Award Plaintiff compensatory damages, including prejudgment interest on any out of pocket damages and Impose punitive damages against each individual Defendant. Award Plaintiff all costs and disbursements incurred in the prosecution of this action, including reasonable attorneys' fees under 42 U.S.C. §1988, and grant such other and further relief as may be proper.

## COUNT NINE

## TITLE 42 U.S.C. SECTION 1983

## CIVIL RIGHTS ACTION FOR DEPRIVATION OF RIGHTS.

228. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein and further alleges:

229.  Mask wearing is a well established New York State 'custom'.

230.  Oneida County Sheriff/County Executive policy/Sauquoit Valley School District Policy is in accordance with the New York State 'custom' of mask determinations, guidelines and regulations.

231.  Plaintiff's right to freedom of religion is protected by the first amendment of the Constitution of the United States of America.

232. Freedom of Religion is a natural, absolute right deeply rooted in the American Constitutional System. It is a right available to all…Equity. 2d Am. Jur. § 405

233. The individual freedom of conscience protected by the First Amendment embraces the right to select any faith or none at all, just as it protects the right to speak and the right to refrain from speaking. These concepts are part of the broader concept of individual freedom of mind.

234. Freedom of Religion is a natural, absolute right deeply rooted in the American Constitutional System. It is a right available to all…Equity. 2d Am. Jur. § 405.

235.  For the Plaintiff, the breath is one of the key foundations to purification and clearing of the mind.

236. See Exhibit W for the similar records request submitted to each one of the schools in the County, the County itself, New York Department of Health, C.D.C, and N.I.H.

237. All the responses so far are "no records exist for your request."

238. Plaintiff has been unable to locate any proof that a sample from a sick patient who expressed the symptoms associated with having SARS-COV2 was taken and the sample was purified without adding any additional sources of D.N.A. or R.N.A and the virus was shown to exist in its' complete form.

239. Plaintiff believes Germ Theory to be a complete Fraud, and knows and lives his life knowing Terrain Theory is closer to the accurate model to the way life works.

240. Plaintiff as a pennant of his religion does not take any pharmaceutical drugs of any kind, including over the counter drugs.

241. Plaintiff provides and maintains perfect health through the practice of his religious beliefs, this includes his breath work.

242. **WHEREFORE**, Plaintiff demand judgment for declaratory injunction against Forced wearing of Face Masks for indoor public accommodations everywhere in Oneida County, nominal damages, compensatory damages and punitive damages against Defendants together with such other and further relief as the Court may deem reasonable and just under circumstances.

## COUNT TEN

### COMMON LAW NEGLIGENCE

243. Plaintiff re-alleges, restates, and incorporates by reference the allegations in the foregoing jurisdictional, and factual allegations.

244. Defendant owed Plaintiff a legal duty to exercise at least reasonable care or, in some cases, to conform to a higher standard of care.

245. Defendant breached his duty of care.

246. Plaintiff was damaged as a proximate result of the Defendant's breach of that duty of care.

247. Defendant Maciol, Picente, and Wheelock were informed that their respective mask policies were unlawful and unconstitutional prior to the incident on February 1, 2022 at the Sauquoit Valley Central High School.

248. Defendants all swore an oath to uphold the constitution and all failed to do so.

249. Plaintiff respectfully requests that the Court enter punitive and monetary damages and such further relief as the Court deems just that Defendants' actions under color of law through a mask coercion that violates Plaintiff's substantive Due Process rights.

## COUNT ELEVEN

### COMMON LAW CONSPIRACY

250. Plaintiff re-alleges, restates, and incorporates by reference the allegations in the foregoing jurisdictional, and factual allegations.

251. All Defendants had (1) a task to be accomplished; (2) an agreement on the object or course of action, to wit, to deprive Plaintiffs of their right to equal protection of the laws, specifically the right to access places of public accommodation absent of discrimination; (3) performed one or more unlawful overt acts; and (4) caused Plaintiffs damages that were a direct result of those acts.

252. All Defendants enforced directly or indirectly the face mask policies or refused to perform an official duty to take Plaintiffs criminal complaint.

253. All Defendants directly or indirectly protected, insulated, and authorized agents to act in wanton disregard to the constitutionally protected rights of the Plaintiff thereby creating an environment at the Sauquoit Valley High School that recklessly and callously deprived Plaintiffs of his rights.

254. Plaintiff has had to digest a lifetime's worth of legal knowledge which has caused expenses that were not scheduled, sleep loss, weight loss, and other physical

symptomatologies due to the mental and emotional distress caused by Defendants' negligent actions.

255. **WHEREFORE,** Plaintiff demand judgment for the violation of his civil rights against all Defendants jointly and severally for actual, general, special, and compensatory damages in the amount of $500,000.00 U.S. dollars and further demand judgment against all Defendants jointly and severally for punitive damages.

## COUNT TWELVE

## INFLICTION OF EMOTIONAL STRESS

256. Plaintiff re-alleges, restates, and incorporates by reference the allegations in the foregoing jurisdictional, and factual allegations.

257. Defendants knew or should've known as reasonable men and women, the duties we each have towards one another as members of society with different beliefs, customs, usages, and practices.

258. Defendants breached their duty as reasonable men and women by recklessly and callously identifying themselves as above the law of the United States, thereby inflicting Plaintiffs with emotional distress, mental anxiety, and causing physical symptomatologies.

259. Plaintiff has had to digest a lifetime's worth of legal knowledge which has caused expenses that were not scheduled, sleep loss, weight loss, and other physical symptomatologies due to the mental and emotional distress caused by Defendants' negligent actions.

260. Plaintiff was humiliated, shamed, scoffed, threatened, coerced, and ultimately denied service by Defendants in breach of duty to their fellow man.

261. **WHEREFORE**, Plaintiffs demands judgment, including interest, against Defendants in an amount deemed by this Court to be just and fair and in any other way in which the Court deems appropriate.

## COUNT THIRTEEN

## FRAUD BY OMISSION OR NON-DISCLOSURE

Roberts vs. Oneida County/Sauquoit School District, et al • 67 of 78

262. Plaintiff repeats, re-alleges, and incorporates by reference the allegations in paragraphs 1 through 262 above with the same force and effect as if herein set forth.

263. When Defendants published and distributed their Summary of the Sauquoit Valley Central School District COVID Reopening Plan under the guise of health and safety which they all knew to be neither true nor accurate, they were attempting to defraud the Plaintiff and other Sauquoit Valley Central School District parents similarly situated by non-disclosure.

264. Defendants are public servants and failed to exercise objective reasonableness and in so doing violated the constitution and clearly established state and federal laws, namely title 18 U.S.C. § 241 and § 242.

265. Defendant's intentional acts. "Common law fraud can be the basis for a claim of unfair or deceptive practices under the statute [cites omitted], and an intentional fraud can constitute a basis for the multiplication of damages." McEvoy Travel Bureau, Inc. v. Norton Co., 408 Mass. 704, 714 (1990), PMP Assocs., Inc. v. Globe Newspaper Co., 366 Mass. 593, 596 (1975); Levings v. Forbes & Wallace, Inc., 8 Mass.App.Ct. 498, 504 (1979). Certain misrepresentations to a Plaintiff are actionable under both common law fraud and G.L. c. 93A. Schwanbeck v. Federal-Mogul Corp., 412 Mass. 703, 704-705

(1992) citing Schwanbeck v. Federal-Mogul Corp., 31 Mass.App.Ct. 390, 411-412, 415-416 (1991).

266. The Defendants are responsible not only for their outright untrue written and spoken statements, but also for untruthfully declaring that the "mitigation efforts" were working as intended in order to keep the fraud going as long as possible.

267. Plaintiff Christopher A. Roberts has been suffering from anxiety, a feeling of hopelessness, loss of trust, loss of confidence in and feelings of betrayal by the Sauquoit Valley School District and Oneida County, shock, and emotional scarring, all compensable as emotional distress, and other damages.

268. **WHEREFORE,** Plaintiffs demand judgment for the violation of their civil rights against all the Defendants, jointly and severally, for actual, general, special, punitive damages in the amount of $15,001,776.00 and further demands judgment against all Defendants, jointly and severally, for additional damages in an amount to be determined by the jury, plus the costs of this action, including attorney's fees, and such other relief deemed to be just, fair, and appropriate.

## COUNT FOURTEEN

## TITLE 42 U.S.C. § 2000A

## PROHIBITION AGAINST DISCRIMINATION OR SEGREGATION IN PLACES OF PUBLIC ACCOMMODATION

269. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein and further alleges:

270. The Sauquoit Valley Central High School is a "public accommodation" as defined in Title II of the Civil Rights Act, 42 U.S.C. §2000a(b).

271. The Sauquoit Valley Central High School is a "public accommodation" as defined in Title III of the Civil Rights Act, Reg 28 CFR §36.104.

272. Oneida County is prohibited from "denial of participation" as stated in Federal law 28 CFR §36.202.

273. Plaintiff was denied "participation" and "equal service" at The Sauquoit Valley Central School building according to Civil Rights Act Title III, Sections §36.202(a)(b)(c) and §36.203(a)(b)(c).

Roberts vs. Oneida County/Sauquoit School District, et al • 70 of 78

274. All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, without discrimination or segregation on the ground of race, color, religion, or national origin.

275. Plaintiff Christopher A. Roberts was arbitrarily, capriciously, and unreasonably denied service at a place of public accommodation by Oneida County Deputies at the Sauquoit Valley Central High School which is a public school, as defined in Title II of the Civil Rights Act of 1964.

276. Plaintiff was deprived of the equal access to the public accommodation without effort to accommodate his sincerely held religious beliefs.

277. All Defendants are participants in the violation of Plaintiff's Civil Rights.

278. WHEREFORE Plaintiff demands judgment for injunctive relief and compensatory, nominal, and punitive damages against Defendants together with such other and further relief as the Court may deem reasonable and just under the circumstances.

## COUNT FIFTEEN

## VIOLATION OF FIRST AMENDMENT

## RELIGIOUS FREEDOM

279. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein and further alleges:

280. At all relevant times herein, Plaintiff had a right to practice his religion as he saw fit, to speak freely without fear of retribution, to be secure in his persons and papers, a substantive right to access a public school accommodation, a right not to be forced into involuntary servitude, and a right under the due process and equal protection clauses of the state and federal constitutions not to be deprived of his constitutionally protected interest in his property [Bodies]. U.S.C. Const. Amends. 1, 4, 9, 13, 14

281. The First Amendment provides, inter alia (among other things), that "Congress shall make no law...prohibiting the free exercise" of religion. This clause has been interpreted by the Supreme Court to mean that the government is prohibited from interfering with or attempting to regulate any citizen's religious beliefs, from coercing a citizen to affirm beliefs repugnant to his/her religion or conscience, and from directly

penalizing or discriminating against a citizen for holding beliefs contrary to those held by anyone else.

282. Freedom of Religion is a natural, absolute right deeply rooted in the American Constitutional System. It is a right available to all…Equity. 2d Am. Jur. § 405.

283. The individual freedom of conscience protected by the First Amendment embraces the right to select any faith or none at all, just as it protects the right to speak and the right to refrain from speaking. These concepts is part of the broader concept of individual freedom of mind.

284. Only those beliefs which are sincerely held and religious in nature are entitled to constitutional protection.

285. Religious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment Protection.

286. Plaintiff was subjected to discrimination and treated like a criminal by the Defendants for simply exercising his first amendment right to freedom of expression.

287.  "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.' " Hernandez v. Sessions, 872 F.3d 976, 994 (9th Cir. 2017) (quoting Melendres v. Arpaio, 695 F.3d 990, 1002 (9th Cir. 2012) ).

288. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Elrod v. Burns, 427 U. S. 347, 373 (1976)

289. **WHEREFORE** Plaintiff demands judgment for injunctive relief and compensatory, nominal, and punitive damages against Defendants together with such other and further relief as the Court may deem reasonable and just under the circumstances.

## <u>REQUEST FOR RELIEF</u>

290.  WHEREFORE, Christopher A. Roberts seeks redress for grievances in which this Court can grant relief:

291. Assume Jurisdiction over this action.

292.  Enter a judgment and decree declaring that the Oneida County Public Health Order and Sauquoit Valley Central School Face Mask Policy by Anthony J. Picente acting as Executive for Oneida County and the members of the Sauquoit Valley Central School Board fails the constitutional scrutiny test for ambiguity, vagueness, and is unconstitutional on its face and because it deprives the Plaintiffs the right of due process, freedom of conscience, and property rights as guaranteed to Plaintiff by the United States constitution and both state and federal law.

293. Enter an injunction enjoining Defendants, their agents, officials, servants, employees, and all persons in active concert or participation with them from applying Any Face Mask Policy/Order/Mandate/Custom, so as to prevent the violation of constitutionally protected rights without due process of law.

294.  Award Plaintiff costs for litigation, including assistance of counsel/attorney's fees and expenses, pursuant to 42 U.S.C. 1988.

295. Plaintiff demands additionally, actual damages in the amount of $50,000.00 U.S. dollars per violation of Plaintiff's constitutionally protected rights. Jury shall determine the actual amount of violations.

Roberts vs. Oneida County/Sauquoit School District, et al • 75 of 78

296. Plaintiff demand remuneration for actual damages in the amount of $50,000.00 U.S. dollars for time spent learning how to plead this case.

297. Plaintiff Christopher A. Roberts demand punitive damages in the amount of $5,000.00 U.S. dollars from Defendants Fleury and Aldoori, each for the mental and emotional stress caused to Plaintiffs.

298. Plaintiff Christopher A. Roberts demand punitive damages in the amount of $100,000.00 U.S. dollars from Defendants Picente, Wheelock, Dever, Critelli, Miller, Nicotera, Nelon, and Maciol each for the mental and emotional stress caused to Plaintiff.

299. Plaintiff demands punitive damages from Defendants Oneida County Sheriff Department, and the Sauquoit Valley Central School for $7,500,000.00 U.S. dollars each for the arbitrary, capricious, and unreasonable deprivation of rights guaranteed and secured by the United States Constitution.

300. **WHEREFORE** Plaintiff demands judgment for actual and punitive damages against Oneida County and their corporate subdivisions, together with such other relief as the Court may deem reasonable and just.

I, Christopher A. Roberts, Plaintiff in the above complaint declare under penalty of perjury that the foregoing is true and correct.

Dated : _Sep. 6, 2022_

Christopher A. Roberts

sui juris

P.O. Box 34, Sauqoit, N.Y.13456

croberts417@yahoo.com

315-272-6897

STATE OF NEW YORK, ONEIDA COUNTY

Roberts vs. Oneida County/Sauquoit School District, et al • 77 of 78

BEFORE ME personally appeared Christopher A. Roberts who, being by me first duly sworn, executed the foregoing in my presence and stated to me that the facts alleged therein are true and correct according to his own personal knowledge.


_____     Date:_____Notary Public

My commission expires: