UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CHRISTOPHER A. ROBERTS,

                                    Plaintiff,                        6:22-CV-0918
                                                                       (GTS/TWD)
v.

R. FLEURY, Oneida Cnty. Sheriff Deputy; M. ALDOORI,
Oneida Cnty. Sheriff Deputy; ROBERT M. MACIOL,
Oneida Cnty. Sheriff; ANTHONY J. PICENTE, JR.,
Oneida Cnty. Exec.; RONALD WHEELOCK,
Sauquoit Valley Cent. Sch. Dist. Superintendent;
DANIEL W. GILMORE, Oneida Cnty. Dir. of Health;
SCOTT D. McNAMARA, Oneida Cnty. Dist. Atty.;
JIM DEVER, Sauquoit  Valley Cent. Sch. Dist. Bd.
of Educ. Member; RON CRITELLI, Sauquoit Valley
Cent. Sch. Dist. Bd. of Educ. Member; DAWN MILLER,
Sauquoit Valley Cent. Sch. Dist. Bd. of Educ. Member;
ANTHONY NICOTERA, Sauquoit Valley Cent. Sch.
Dist. Bd. of Educ. Member; TODD NELSON, Sauquoit
Valley Cent. Sch. Dist. Bd. of Educ. Member;
ONEIDA CNTY.; ONEIDA CNTY. SHERIFF DEP'T;
and SAUQUOIT VALLEY CENT. SCH. DIST.,

                                    Defendants.

_____

APPEARANCES:                                        OF COUNSEL:

CHRISTOPHER A. ROBERTS
  Plaintiff, *Pro Se*
PO Box 34
Sauquoit, NY 13456

KENNEY SHELTON LIPTAK NOWAK LLP          DANIEL CARTWRIGHT, ESQ.
  Counsel for the County Defendants       DAVID H. WALSH, IV, ESQ.
4615 North Street
Jamesville, NY 13078

FERRARA FIORENZA P.C.                     CHARLES C. SPAGNOLI, ESQ.
  Counsel for the District Defendants
5010 Campuswood Drive
East Syracuse, NY 13057

GLENN T. SUDDABY, United States District Judge

## DECISION AND ORDER

Christopher A. Roberts ("Plaintiff") commenced this action *pro se* against R. Fleury, Oneida County Sheriff Deputy, M. Aldoori, Oneida County Sheriff Deputy, Robert M. Maciol, Oneida County Sheriff, Anthony J. Picente, Jr., Oneida County Executive, Daniel W. Gilmore, Oneida County Director of Health, Scott D. McNamara, Oneida County District Attorney, Oneida County, Oneida County Sheriff Department (collectively "the County Defendants"), Ronald Wheelock, Sauquoit Valley Central School District ("SVCSD") Superintendent, Jim Dever, SVCSD Board of Education Member, Ron Critelli, SVCSD Board of Education Member, Dawn Miller, SVCSD Board of Education Member, Anthony Nicotera, SVCSD Board of Education Member, Todd Nelson, SVCSD Board of Education Member, and SVCSD (collectively "the District Defendants").  (Compl., Dkt. No. 1.)  Plaintiff seeks relief pursuant to 42 U.S.C. §§ 1983, 1985, and 2000a, as well as other federal and state laws, claiming that Defendants, among other things, deprived him of his "rights, privileges, or immunities secured by the United States Constitution or by Federal and State law and guaranteed by the First, Fourth, [Fifth], Ninth, Thirteenth, and Fourteenth Amendments to the Constitution of the United States;" conspired to deprive him of due process and equal protection, "[v]iolated . . . the United States Constitution and Corresponding Separation of Powers Clause of the New York Constitution," violated the "Federal Preemption/Supremacy Clause," and engaged in unlawful discrimination against him and others similarly situated.  (Compl. ¶¶ 108-289.)

The District Defendants have moved to dismiss the Complaint, or in the alternative, strike the Complaint, arguing that Plaintiff has failed to state a claim upon which relief can be

granted and has failed to comply with Fed. R. Civ. P. 8 (Dkt. No. 6), and the County Defendants have separately moved to dismiss, arguing that Plaintiff has failed to state a claim upon which relief can be granted (with regard to his federal claims), that the Court lacks supplemental jurisdiction over Plaintiff's state law claims, and that Plaintiff has failed to comply with conditions precedent to commencing a lawsuit pursuant to N.Y. General Municipal Law §§ 50-e, 50-i, 50-h (Dkt. No. 28).  Plaintiff has moved to strike the County Defendants' motion to dismiss (Dkt. Nos. 40, 43), and has moved for sanctions against counsel for the County Defendants (Dkt. No. 47).[1]  The County Defendants, in response, have moved, by letter-motion, for relief related to the duplicative nature of Plaintiff's motions to strike and for sanctions. (Dkt. No. 49.)

For the reasons that follow, the District Defendants' and the County Defendants' motions to dismiss (Dkt. Nos. 6, 28), are granted, Plaintiff's motions to strike (Dkt. Nos. 40, 43) are denied, Plaintiff's motion for sanctions (Dkt. No. 47) is denied, and the County Defendants' letter-motion (Dkt. No. 49) is, by virtue of the Court's denial of Plaintiff's motions, granted.

## I.    RELEVANT BACKGROUND

### A.    Factual Allegations of the Complaint[2]

In August 2021, the SVCSD Board of Education adopted "Resolution 12[,] which included the policy of the face mask requirement for visitors to the Sauquoit Valley Central School High School."  (Compl. ¶ 40.)  "On December 9, 2021[,] Picente announced a temporary

---

[1]  To the extent that requests for relief are embedded in other filings—for example, Dkt. Nos. 35, 50, and 51—such requests are also denied for the reasons stated herein.

[2]  Consistent with the standard of review, the facts are drawn from the Complaint and presented in the light most favorable to Plaintiff.

public health order that required masks to be worn in all indoor public places and for

temperature checks to be conducted at social gatherings taking place outside of a private

residence, with an opt-out on the condition that only vaccinated people are allowed entry"

(hereinafter, with the resolution adopted by the Board of Education, the "Mask Mandates").  (*Id.*

¶ 42.)  Plaintiff expressed his opposition to the Mask Mandates in an email to Wheelock and, on

January 27, 2022, requested to speak at a school board meeting on February 1, 2022.  (*Id.* ¶¶ 45-

46.)

On January 28, 2022, at the Waterville Standard Bakery, Plaintiff, looking in through the

window, noticed three officers from the Oneida County Sheriff's office not wearing

masks—there was a sign on the door that requested those entering to wear a mask.  (*Id.* ¶¶ 48-

50.)  Plaintiff "watched as Peter Bianco hand delivered a three[-]page [l]etter to the Sheriff[,

Maciol]."  (*Id.* ¶ 52.)  The letter happened to be from Plaintiff to Maciol, "informing him to

Cease and Desist with his illegal and unlawful Face Mask Policy."  (*Id.* ¶ 53.)  Plaintiff

thereafter emailed the letter to a number of others as well.  (*Id.* ¶ 54.)  In person at the bakery,

and in writing, Plaintiff "informed" Maciol about 21 U.S.C. § 360bbb-3 and emergency use

authorization.  (*Id.* ¶¶ 56-57.)

Plaintiff then embarked on a letter-mailing, email-sending, and telephone-calling

campaign, expressing his objections to the Mask Mandates and threatening legal action.  (*Id.*

¶¶ 60-65.)  On February 1, 2022, Plaintiff was stopped by two Sheriff's Deputies as he entered

Sauquoit Valley High School because he was in violation of the Mask Mandates.  (*Id.* ¶¶ 66-67.)

Plaintiff told the Sheriff's Deputies that "he has the right to enter the building without putting

on a face mask" and insisted that he be allowed to speak at the school board meeting without

complying with the Mask Mandates.  (*Id.* ¶¶ 68-72.)  Plaintiff was not allowed to enter the building because of his refusal to wear a mask and was, therefore, unable to speak at the school board meeting.  (*Id.* ¶ 73.)

Thereafter, Plaintiff began sending emails and letters to members of the school board, the Sheriff and Sheriff's Deputies, and other county and school district officials.  (*Id.* ¶¶ 75-80.) The reason that Plaintiff refused to wear a mask is that his "religion prevents him from wearing" one because he "has a religious belief that the masks are part of a satanic ritual that he refuses to be apart [sic] of."  (*Id.* ¶¶ 84-85.)

### B.    Relevant Procedural History

Plaintiff commenced this action on September 6, 2022, bringing claims for alleged violations of his constitutional rights pursuant to 42 U.S.C. § 1983, as well as violations of 42 U.S.C. §§ 1985 and 2000a and claims arising under the New York State Constitution and state tort law.  (Compl.)  Specifically, Plaintiff brings the following fifteen causes of action: (1) "Violation of Due Process 42 U.S.C. § 1983"; (2) "Violation of 42 U.S.C. § 1985"; (3) "Violation of Substantive Due Process 42 U.S.C. § 1983"; (4) "Violation of the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution 42 U.S.C. § 1983"; (5) "Violation of the United States Constitution and Corresponding Separation of Powers Clause of the New York Constitution"; (6) "Substantive Due Process and Violation of the Fifth, Ninth, and Fourteenth Amendments"; (7) "Violation of the Guarantee Clause and Due Process, Fifth and Fourteenth Amendments"; (8) "Violation of Federal Preemption/Supremacy Clause"; (9) "Title 42 U.S.C. [§] 1983 Civil Rights Action for Deprivation of Rights"; (10) "Common Law Negligence"; (11) "Common Law Conspiracy"; (12) "Infliction of Emotional Distress"; (13)

"Fraud by Omission or Non-Disclosure"; (14) "Title 42 U.S.C. § 2000a Prohibition Against Discrimination or Segregation in Places of Public Accommodation"; and (15) "Violation of First Amendment Religious Freedom." (Compl. ¶¶ 108-289.)

## II.      GOVERNING LEGAL STANDARD

It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga County*, 549 F. Supp. 2d 204, 211, nn.15-16 (N.D.N.Y. 2008) (McAvoy, J., adopting Report-Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, some elaboration regarding that ground is appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[ ]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp. 2d at 212, n.20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant fair notice of

what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp. 2d at
212, n.17 (citing Supreme Court cases) (emphasis added).[3]

The Supreme Court has explained that such fair notice has the important purpose of
"enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper
decision on the merits" by the court. *Jackson*, 549 F. Supp. 2d at 212, n.18 (citing Supreme
Court cases); *Rusyniak v. Gensini*, 629 F. Supp. 2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby,
J.) (citing Second Circuit cases).  For this reason, as one commentator has correctly observed,
the "liberal" notice pleading standard "has its limits."  2 *Moore's Federal Practice* §
12.34(1)(b) at 12-61 (3d ed. 2003).  For example, numerous Supreme Court and Second Circuit
decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard.
*Rusyniak*, 629 F. Supp. 2d at 213, n.22 (citing Supreme Court and Second Circuit cases); *see
also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an
appellate decision holding that a complaint had stated an actionable antitrust claim under 15
U.S.C. § 1.  *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955 (2007).  In doing so, the Court
"retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957),
that "a complaint should not be dismissed for failure to state a claim unless it appears beyond
doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him
to relief." *Twombly*, 127 S. Ct. at 1968-69.  Rather than turn on the conceivability of an
actionable claim, the Court clarified, the "fair notice" standard turns on the plausibility of an

---

[3]   *Accord Flores v. Graphtex*, 189 F.R.D. 54, 54 (N.D.N.Y. 1999) (Munson, J.); *Hudson
v. Artuz*, 95-CV-4768, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998); *Powell v. Marine
Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (McAvoy, C.J.).

actionable claim. *Id.* at 1965-74.  The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id.* at 1965.  More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id.*

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).  "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense . . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." *Iqbal*, 129 S.Ct. at 1950 (internal quotation marks and citations omitted).  However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id.*, it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 129 S.Ct. at 1949 (internal citations and alterations omitted).  Rule 8

"demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citations omitted).

A few words are appropriate regarding what documents are considered when a dismissal for failure to state a claim is contemplated. Generally, when contemplating a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the four corners of the complaint may be considered without triggering the standard governing a motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the Court can take judicial notice for the factual background of the case.[4]

---

[4]  *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, No. 10-573, 2011 WL 2135734, at *1 (2d Cir. June 1, 2011) (explaining that conversion from a motion to dismiss for failure to state a claim to a motion for summary judgment is not necessary under Fed. R. Civ. P. 12(d) if the "matters outside the pleadings" in consist of (1) documents attached to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6) "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint . . . .  Where a document is not incorporated by reference, the court may neverless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint . . . .  However, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document. It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.") (internal quotation marks and citations omitted); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (internal quotation marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the

"The standard of review under Fed. R. Civ. P. 12(b)(1) is similar, except that the court 'may refer to evidence outside the pleadings,' and '[a] plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists.'" *Lebovits v. Cuomo*, No. 1:20-CV-1284, 2022 WL 344269, at *2 (N.D.N.Y. Feb. 4, 2022) (quoting *Makarova v. United States*, 201 F.3d 110, 113 [2d Cir. 2000]).

Finally, pleadings drafted by *pro se* plaintiffs must be construed liberally and held to lesser standards than those drafted by attorneys.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). As a result, reading a *pro se* complaint, the Court must "interpret [the complaint] to raise the strongest arguments that [it] suggest[s]."  *Weixel v. Bd. of Educ.*, 287 F.3d 138, 146 (2d Cir. 2002) (internal quotation marks and citation omitted).  However, the "special solicitude" afforded to pro se litigants does not allow courts to read into a pleading claims that are inconsistent with the pleading's allegations, nor does it "exempt a party from compliance with relevant rules of procedural and substantive law."  *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (internal quotation marks and citation omitted).

## III.    ANALYSIS

### A.    Incognizable or Moot Claims and Theories

#### 1.    Emergency-Use-Authorization Claim

Plaintiff purports to assert a claim for a "violation" of 21 U.S.C. § 360bbb-3 of the Federal Food, Drug, and Cosmetic Act ("FDCA") as his eighth cause of action.  (Compl. ¶¶ 205-27.)  However, the FDCA has no "private right of action" to "enforce alleged

---

complaint," the court may nevertheless take the document into consideration in deciding [a] defendant's motion to dismiss, without converting the proceeding to one for summary judgment.") (internal quotation marks and citation omitted).

violations." *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1113 (2d Cir. 1997) (citing 21

U.S.C. § 337[a]); *see Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 817 (1986) (stating

that there is no private right of action for violation of the FDCA).  The FDCA explicitly states

that its requirements may only be enforced by the United States or, under certain circumstances,

by a State.  *See* 21 U.S.C. § 337(a) ("[A]ll such proceedings for the enforcement, or to restrain

violations, of this chapter shall be by and in the name of the United States.").  As a result, there

is no private right of action to enforce alleged violations of the emergency use authorization

itself, because the private right of action to enforce an agency requirement "can extend no

further than the personal right conferred by the plain language of the statute." *Taylor ex rel.*

*Wazyluk v. Hous. Auth. of New Haven*, 645 F.3d 152, 153 (2d Cir. 2011).  Plaintiff, therefore,

cannot leverage the emergency use authorization to invalidate the Mask Mandates here and the

eighth cause of action must be dismissed.  *See Lloyd v. Sch. Bd. of Palm Beach Cnty.*, 570 F.

Supp. 3d 1165, 1175-76 (S.D. Fla. 2021) (explaining that, due to the unavailability of private

relief under the FDCA, a claim by a private individual that the FDCA preempts a state mask

mandate under the Supremacy Clause must be dismissed).

### 2.      The Standalone Section 1983 Claim

As Defendants argue and Plaintiff concedes, Plaintiff's ninth cause of action is styled as

a standalone Section 1983 claim—not as a claim for violation of a specific constitutional

violation brought pursuant to Section 1983.  (Dkt. No. 28, Attach. 1 at 18 [citing Compl.

¶¶ 228-42]; Dkt. No. 37 at 11.)  Plaintiff brings a number of other claims for alleged violations

of his constitutional rights pursuant to Section 1983; however, the ninth cause of action is based

on Section 1983 alone.  (Compl.)  "Section 1983 'is not itself a source of substantive rights,' but

merely provides 'a method for vindicating federal rights elsewhere conferred.'"  *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (citation omitted).  Therefore, Plaintiff's ninth cause of action is not cognizable and must be dismissed.

### 3.  Separation-of-Powers Claim

Plaintiff's fifth cause of action, titled "Violation of the United States Constitution and Corresponding Separation of Powers Clause of the New York Constitution," requests punitive and monetary damages because the "Mask Policy, issued by the Oneida County Health Order unbalances [the] constitutional framework by allowing the executive branch to issue directives with the force of law without proper delegation from the legislature."  (Compl. ¶¶ 179-86.)  The separation of powers between the three co-equal branches of the federal government is enshrined in the Constitution and operates as a system of checks and balances, allowing the branches to "defend their powers on an ongoing basis."  *Dep't of Transp. v. Ass'n of Am. Railroads*, 575 U.S. 43, 67-74 (2015) (Thomas, J., concurring).  In other words, the "separation of powers" is a constitutional construct that allows the branches of government to keep one another in check—not the source of a private cause of action against state actors.  Accordingly, a claim by a private plaintiff for violation of the principle of separation of powers is not cognizable.  *See McCarthy v. Cuomo*, No. 20-CV-2124, 2020 WL 3286530, at *6 (E.D.N.Y. June 18, 2020) ("Plaintiffs argue that the COVID-19 Executive Orders constitute a violation of the separation of powers principles embodied in the Constitution . . . .  This legal claim is not cognizable.") (citation omitted).)  Therefore, the fifth cause of action is not cognizable and must be dismissed.

### 4.  Claim for Declaratory Judgment and Injunctive Relief

Plaintiff seeks a declaratory judgment that the Mask Mandates were unconstitutional and, in turn, seeks injunctive relief against enforcement of the Mask Mandates.  (Compl. ¶¶ 94-107.)  The District Defendants and the County Defendants argue that any request by Plaintiff for declaratory judgment or injunctive relief is moot because the Mask Mandates expired prior to the 2022-2023 school year.  (Dkt. No. 6, Attach. 6 at 8; Dkt. No. 28, Attach. 1 at 25.)  Plaintiff argues that his requests are not moot because the Mask Mandates could be reinstated at any time.  (Dkt. No. 21 at 13-14.)

"'A case becomes moot—and therefore no longer a "Case" or "Controversy" for purposes of Article III—when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'"  *Farrell v. Hochul*, No. 22-517, 2023 WL 3014758, at *1 (2d Cir. Apr. 20, 2023) (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 [2013]).  "The voluntary cessation of allegedly illegal conduct usually will render a case moot if the defendant can demonstrate that (1) there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation."  *Farrell,* 2023 WL 3014758, at *1 (internal quotation marks and citations omitted).  "A defendant satisfies its burden where it shows that the possibility of recurrence is merely 'speculative.'"  *Id.* (citation omitted).

The New York State Commissioner of Health was authorized by 10 N.Y.C.R.R. § 2.60 "to issue determinations requiring that masks be worn in certain public places."  *Id.*  Under the authority of § 2.60, the Commissioner issued requirements that mandated "universal masking of teachers, staff, students, and visitors to P-12 schools over age two and able to medically tolerate face covering/mask and regardless of vaccination status."  *Id.*  Indeed, the Mask Mandates here,

which reference § 2.60, include the parameters and exceptions required by the Commissioner. (Dkt. No. 1, Attachs. 2, 4.)

However, § 2.60 expired in February 2023 and, with it, expired the Commissioner's authority to issue mask requirements. *Farrell*, 2023 WL 3014758, at *2. Additionally, a New York State court found that § 2.60 was "promulgated and enacted in a manner that violated the New York State Constitution, the State Administrative Procedure Act, and the Public Health Law [making] it even more speculative that the Commissioner even *could*—let alone would—reissue a school mask mandate." *Id.* at *1 & n.2.

The school masking requirements issued by the Commissioner were lifted in March 2022, have not been reinstated since, and, regardless, could not be reinstated under the authority of § 2.60. *Id.* Indeed, the District ceased its own enforcement of the Mask Mandates in March 2022, when the Commissioner's mandate was lifted. (Dkt. No. 6, Attach. 1 ¶¶ 4-13.) For these reasons, Defendants have met their burden of showing the possibility of recurrence is merely speculative, and, therefore, the claim for declaratory and injunctive relief sought by Plaintiff is moot.

### B.   The County Defendants' Motion[5]

---

[5]   The County Defendants request that the exhibits attached to the Complaint and additional documents, submitted with the County Defendants' motion, be considered by the Court when deciding the pending motions. (Dkt. No. 28, Attach. 1 at 10.) The exhibits annexed to the County Defendants' motion — which consist of notices and letters related to a state court action — are outside of, and not integral to, the complaint, so it may not be considered unless the Court, in its discretion, chooses to convert the motion to dismiss into a motion for summary judgment. *See Fonte v. Bd. of Managers of Cont'l Towers Condo.*, 848 F.2d 24, 25 (2d Cir. 1988) ("Rule 12(b) gives district courts two options when matters outside the pleadings are presented in response to a 12(b)(6) motion: the court may exclude the additional material and decide the motion on the complaint alone or it may convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to

### 1.    Causes of Action and Claims Conceded

Plaintiff, in his opposition to the County's motion, explicitly concedes to the County's arguments in support of dismissal of certain claims, causes of action, and remedies.  (Dkt. No. 37 at 11.)  Specifically, Plaintiff does not oppose the dismissal of all claims against the County Defendants in their official capacities,[6] the dismissal of the Oneida County Sheriff Department from this action, nor dismissal of the following causes of action: (1) violation of 28 U.S.C. § 1985; (2) violation of the Equal Protection Clause of the Fourteenth Amendment, brought pursuant to Section 1983; (3) the "standalone" Section 1983 claim (Plaintiff's ninth cause of action); (4) common law conspiracy; (5) intentional infliction of emotional distress; and (6) fraud by omission or non-disclosure.  (*Id.*)  Additionally, Plaintiff does not oppose the County

---

present supporting material.") (citations omitted).  The Court declines to convert the motion to dismiss into a motion for summary judgment and, therefore, will not consider such evidence outside of the Complaint.

[6]   Plaintiff does not concede the dismissal of the official capacity claims against the individual District Defendants; however, the Section 1983 official capacity claims against the individual District Defendants must be dismissed, because they are redundant of the Section 1983 claims against the District itself.  The District Defendants argue that all claims brought against non-municipal defendants in their official capacities should be dismissed as redundant of the claims against the County and the District.  (Dkt. No. 6, Attach. 6 at 11.)  Plaintiff responds with a general statement of law, unrelated to whether official capacity claims are duplicative of claims against a municipality, stating that "suits against state officials in their [o]fficial [c]apacities for prospective injunctive relief to stop ongoing violations of federal law are permitted."  (Dkt. No. 21 at 17 (internal quotation marks and citation omitted).)  "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."  *Sheriff's Silver Star Ass'n of Oswego Cty., Inc. v. County of Oswego*, 56 F. Supp. 2d 263, 265 n.3 (N.D.N.Y.1999) (internal quotation marks and citation omitted).  And, for this reason, courts routinely dismiss official capacity claims as redundant when the municipal entity is also a defendant to the same claims.  *See id.* ("[C]ourts have dismissed official-capacity claims as unnecessary or redundant where similar claims are asserted against the entity.") (citations omitted); *Cea v. Ulster County*, 309 F. Supp. 2d 321, 327 n.6 (N.D.N.Y. 2004).  Therefore, all Section 1983 claims brought against individual Defendants in their official capacity are dismissed.

Defendants' arguments that punitive damages are not available against any County Defendants in their official capacities,[7] that declaratory judgment and injunctive relief are not available, and that Plaintiff is not entitled to the impanelment of a Grand Jury for the alleged civil offenses.[8] (*Id.*)  The County Defendants' unopposed and facially meritorious arguments are, therefore, granted.  (Dkt. No. 28, Attach. 1 at 12-13, 23-25; Dkt. No. 39 at 1-2.) *See also Johnson v. Lew*, No. 1:13-CV-1072, 2015 WL 4496363, at *5 & n.6 (N.D.N.Y. July 23, 2015); *Metro. Prop. & Cas. Ins. Co. v. Rodick*, No. 1:21-CV-1039, 2023 WL 6122849, at *5 & n.4 (N.D.N.Y. Sept. 19, 2023); N.D.N.Y. L.R. 7.1(a)(3).

Accordingly, only the following claims remain against the County Defendants, who, hereafter, are Fleury, Aldoori, Maciol, Picente, Gilmore, and McNamara in their individual capacities and the County: (1) the first cause of action for violation of procedural due process, pursuant to Section 1983; (2) the third cause of action for violation of substantive due process, pursuant to Section 1983; (3) the fifth cause of action for "violation of the United States

---

[7]  Although Plaintiff does oppose the District Defendants' argument that punitive damages against the District are barred by public policy, punitive damages are not available against the District, the County, or any individual defendants in their official capacities.  Public policy prohibits an award of punitive damages against municipalities and municipal employees sued in their official capacities because, among other reasons, such an award "'punishes' only the taxpayers." *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 267-71 (1981) (citation omitted); *see Alexander v. County of Onondaga*, No. 5:08-CV-748, 2009 WL 1322311, at *7 (N.D.N.Y. May 12, 2009) ("Municipalities and municipal employees sued in their official capacity are immune from punitive damages.").  For these reasons, to the extent Plaintiff seeks punitive damages against the District, the County, or the individual defendants in their official capacities, such claims for punitive damages are dismissed.

[8]  Plaintiff does not concede his request for the impanelment of a Grand Jury against the District Defendants.  However, the function of a Grand Jury existing exclusively within the domain of criminal matters, and, the case here being civil in nature, no such process can be undertaken here.

Constitution and corresponding Separation of Powers Clause of the New York Constitution";
(4) the sixth cause of action for violation of substantive due process and violations of the Fifth,
Ninth, and Fourteenth Amendments, pursuant to Section 1983; (5) the seventh cause of action
for violation of the Guarantee Clause and violations of the Fifth and Fourteenth Amendments,
pursuant to Section 1983; (6) the tenth cause of action for common law negligence; (7) the
fourteenth cause of action under 42 U.S.C. § 2000a for violation of the "prohibition against
discrimination or segregation in places of public accommodation"; and (8) the fifteenth cause of
action for violation of the Free Exercise Clause of the First Amendment, pursuant to Section
1983.

### 2.    Constitutional Claims

The Court will first address Plaintiff's constitutional claims against the County
Defendants, brought pursuant to Section 1983.

### a.    Procedural Due Process

The County Defendants argue that Plaintiff's procedural due process claim should be
dismissed because it fails for the reasons articulated in *Hopkins Hawley LLC v. Cuomo* —
namely, that a person is not entitled to due process protections against government action that is
"'general in application' and looks to the future," or, in other words, is "legislative in nature."
518 F. Supp. 3d 705, 707 (S.D.N.Y. 2021) (citation omitted); (Dkt. No. 28, Attach. 1 at 16-17.)
Plaintiff contends that the County Defendants deprived him of "his rights of life, liberty, or
property, without due process of law," when they "arbitrarily demanded he put on [a mask] as a
stipulation to access a public accommodation at the peril of Plaintiff's right to body autonomy,
right to peaceably assemble, and right to practice his religious beliefs."  (Dkt. No. 37 at 15-16.)

Ordinarily, a plaintiff states a procedural due process claim "by plausibly alleging that '(1) state action (2) deprived him or her of liberty or property (3) without due process of law.'" *Bellin v. Zucker*, 6 F.4th 463, 474 (2d Cir. 2021) (citation omitted).  However, "it is black letter law that a person is not entitled to procedural due process protections against government action that is legislative in nature."  *Hopkins Hawley LLC*, 518 F. Supp. 3d at 714 (citing *Bi-Metallic Inv. Co. v. State Bd. of Equalization*, 239 U.S. 441, 445 [1915]).  A government action is legislative in nature if it has "general application" and "applies prospectively."  *Id.* (citation omitted).

The Mask Mandates were legislative in nature because they satisfy the requirements that they have general application and apply prospectively, given that they generally required masking for all teachers, students, staff, and visitors in schools, going forward from the dates they were effective.  *See, e.g.*, *Donohue v. Hochul*, No. 21-CV-8463, 2022 WL 673636, at *8 (S.D.N.Y. Mar. 7, 2022), *vacated and remanded on other grounds by Farrell v. Hochul*, No. 22-517, 2023 WL 3014758 (2d Cir. Apr. 20, 2023) (analyzing New York's statewide mask mandate and concluding that it was "legislative in nature" for the same reasons).  Therefore, Plaintiff has failed to state a claim that the County Defendants have violated procedural due process and his first cause of action must be dismissed as against them.

### b.    Substantive Due Process

The County Defendants contend that Plaintiff's substantive due process claim must be dismissed because "the [M]ask [M]andates at issue are subject to rational basis review and clearly are rationally related to a legitimate government interest," relying on the reasoning in *Zinman v. Nova Se. Univ., Inc.*, No. 21-CV-60723, 2021 WL 4025722, at *17 (S.D. Fla. Aug.

30, 2021), *report and recommendation adopted sub nom. Zinman v. Nova Se. Univ.*, No. 21-CIV-60723, 2021 WL 4226028 (S.D. Fla. Sept. 15, 2021), *aff'd sub nom. Zinman v. Nova Se. Univ., Inc.*, No. 21-13476, 2023 WL 2669904 (11th Cir. Mar. 29, 2023).  (Dkt. No. 28, Attach. 1 at 17.)  Plaintiff argues that the reasoning in *Zinman* is inapplicable because here he questions the actual existence of COVID-19.  (Dkt. No. 37 at 17-18.)

"[T]he Due Process Clause of the Fourteenth Amendment embodies a substantive component that protects against 'certain government actions regardless of the fairness of the procedures used to implement them.'" *Immediato v. Rye Neck Sch. Dist.*, 73 F.3d 454, 460 (2d Cir. 1996) (quoting *Daniels v. Williams*, 474 U.S. 327, 331 [1986]).  Generally, a regulation "need only be reasonably related to a legitimate state objective."  *Immediato*, 73 F.3d at 461 (citing *Reno v. Flores*, 507 U.S. 292, 303-06 [1993]). However, when a regulation infringes a fundamental right, it is subject to strict scrutiny review and must be "narrowly tailored to serve a compelling state interest."  *Flores*, 507 U.S. at 302.  A right is fundamental if it is "implicit in the concept of ordered liberty," *Palko v. Connecticut*, 302 U.S. 319, 325-26 (1937), or "deeply rooted in this Nation's history and tradition," *Moore v. E. Cleveland*, 431 U.S. 494, 503 (1977).

Some rights, such as the right to assemble for religious worship, which is protected by the Free Exercise Clause of the First Amendment, are clearly fundamental.  *See Roman Cath. Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 16 (2020) (holding that COVID-related limits on attendance in churches and synagogues were subject to strict scrutiny).  On the other hand, federal courts that have been asked to rule on the constitutionality of mask mandates have uniformly found that such mandates do not implicate fundamental rights and are thus subject to rational basis review.  *Doe v. Franklin Square Union Free Sch. Dist.*, 568 F. Supp. 3d 270, 288

(E.D.N.Y. 2021) (collecting cases).  As such, the Mask Mandates are subject only to rational

basis review.

Under the rational basis standard, a law is constitutionally flawed only if it was not

"rationally related to a legitimate state interest."  *City of Cleburne v. Cleburne Living Ctr.*, 473

U.S. 432, 440 (1985).   As emphasized by the Supreme Court, the application of rational basis

review "is not a license for courts to judge the wisdom, fairness, or logic of legislative choices."

*Heller v. Doe by Doe*, 509 U.S. 312, 319 (1993) (citation omitted).  Laws subject to rational

basis review are "accorded a strong presumption of validity."  *Heller*, 509 U.S. at 319.  And the

party challenging a law subject to rational basis review has the burden to "negat[e] every

conceivable basis which might support it."  *Id.* (citation omitted).

Plaintiff has not met his burden.[9]  Neither the existence of COVID-19, nor the

effectiveness of face masks in preventing its spread, are at issue here.  This is not to say that the

Mask Mandates, or masking mandates imposed elsewhere, were without flaw.  And many

courts, including this court, observed and held that certain pandemic related government action

certainly violated the constitutional rights of individuals in this country.  *See, e.g.*, *Soos v.*

*Cuomo*, 470 F. Supp. 3d 268, 284-85 (N.D.N.Y. 2020) (enjoining and restraining the state of

---

[9]  Plaintiff also raises the argument, albeit in the context of his procedural due process
claim, that the Mask Mandates violated his right to refuse medical treatment—a right that
Plaintiff characterizes as fundamental.  (Dkt. No. 37 at 16-18.)  The Supreme Court has held
that the right to refuse medical care is fundamental under certain circumstances (circumstances
that are not present here).  *Cruzan by Cruzan v. Dir., Mo. Dep't of Health*, 497 U.S. 261, 278-79
(1990).  Regardless, Plaintiff's right to refuse medical treatment—whether it was fundamental
or not—was not implicated, let alone violated, because "[w]hile the Mask Mandate[s were]
obviously intended as a health measure, [they] no more require[d] a 'medical treatment' than
laws requiring shoes in public places . . . or helmets while riding a motorcycle."  *Franklin
Square Union Free Sch. Dist.*, 568 F. Supp. 3d at 289-91 (internal citations omitted).

New York from enforcing capacity limitations that treated religious activities less favorably than comparable secular activities). However, the Mask Mandates clearly survive rational basis review, because they were "rationally related to [the] legitimate state interest" of controlling the spread of the COVID-19 virus. *See Franklin Square Union Free Sch. Dist.*, 568 F. Supp. 3d at 275-76 ("[Federal courts] have uniformly found that public mask mandates do not implicate fundamental rights, and that such mandates easily clear rational basis review."); *Mongielo v. Hochul*, No. 22-CV-116, 2023 WL 2307887, at *14-17 (W.D.N.Y. Mar. 1, 2023) (holding that school mask mandate passed muster under rational basis review). Plaintiff's sixth and seventh[10] causes of action must, therefore, be dismissed as against the County Defendants.

### c.     First Amendment[11]

The County Defendants contend that Plaintiff's First Amendment claim, his fifteenth

---

[10]     Plaintiff advances a number of meandering theories in connection with his seventh cause of action, however, the only relief he seeks is for alleged violation of his substantive due process rights. (Compl. ¶ 204.) To the extent Plaintiff attempts to bring a claim for violation of the Guarantee Clause, such a challenge to state or local government action is nonjusticiable and must be dismissed. *See Mongielo*, 2023 WL 2307887, at *11-12 ("The [ ] Supreme Court and other courts have typically found that '[G]uarantee [C]lause' challenges to state action involve non[ ]justiciable political questions.") (internal quotation marks and citation omitted); *Coughlin v. N.Y. State Unified Ct. Sys.*, No. 222CV04002, 2023 WL 7091904, at *5 (E.D.N.Y. Oct. 26, 2023) ("Several district courts have declined to find a justiciable Guarantee Clause claim in the context of New York's COVID-19 enactments . . . . While the Court is mindful that there may be some rare Guarantee Clause question that gives rise to a justiciable claim, Plaintiffs' claim is not that exception.").

[11]     The Complaint references the First Amendment's protection of freedom of speech twice. (Compl. ¶¶ 98, 153.) However, the references to free speech appear only in the context of Plaintiff's 42 U.S.C. § 1985 claim. (*Id.*) Because the Section 1985 claim is being dismissed against Defendants for the reasons herein, the Court will analyze only the freedom of religion aspect to Plaintiff's First Amendment claim.

cause of action, must be dismissed because the Mask Mandates pass the *Lemon* test[12] and because his allegations are conclusory and otherwise non-actionable.  (Dkt. No. 28, Attach. 1 at 18-19.)  Plaintiff argues, in a conclusory manner, that the Mask Mandates were not neutrally applied because there were exemptions for individuals under the age of two and for those with certain medical conditions, but not for his religious beliefs, and because "[f]orcing [plaintiff] to put on a mask for the belief of somebody else for something that has not been proven to exist is repugnant to [his] beliefs."  (Dkt. No. 37 at 18-24.)  Although Plaintiff does not mention the Establishment Clause by name, and only explicitly references the *exercise* of religion, his allegations and arguments, construed liberally, implicate both the Establishment and Free Exercise Clauses of the First Amendment.  (*Id.*; Compl. ¶¶ 92, 279-89.)

"Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof[.]"  U.S. Const. Amend. I.  And, generally, the Establishment Clause requires that "one religious denomination cannot be officially preferred over another."  *Larson v. Valente*, 456 U.S. 228, 244 (1982).

Plaintiff's allegations, at least tangentially, concern whether the Mask Mandates advanced religious beliefs that run contrary to those Plaintiff claims to believe—allegations that sound in the Establishment Clause.  (Dkt. No. 37 at 24 ("Plaintiff's religion prevents him from wearing a mask[.]  Plaintiff has a religious belief that the masks are part of a satanic ritual that

---

[12]   The Supreme Courts' decision in *Lemon v. Kurtzman*, 403 U. S. 602 (1971), has been abandoned and no longer governs the analysis of alleged Establishment Clause violations.  *See Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 510 (2022) ("[G]iven the apparent 'shortcomings' associated with *Lemon*'s 'ambitiou[s],' abstract, and ahistorical approach to the Establishment Clause — this Court long ago abandoned *Lemon* and its endorsement test offshoot.") (citation omitted).  The Court will, instead, engage in a brief analysis of Plaintiff's Establishment Clause allegations that is in accord with current precedent.

he refuses to be apart [sic] of . . . .  Defendants denied Plaintiff his [F]irst Amendment rights that [prohibit] government or State action from interfering with or attempting to regulate any citizen's religious beliefs, coercing a citizen to affirm beliefs repugnant to his religion or conscience, and by directly penalizing or discriminating against a citizen for holding beliefs contrary to those held by everyone else.") (citing Compl. ¶¶ 84-88, 92, 235, 241).)  However, the Complaint does not raise a plausible inference that the Mask Mandates actually advanced any religious beliefs, nor that citizen of certain faiths were penalized or discriminated against because of their religious beliefs.  Indeed, the Mask Mandates, implemented for solely secular purposes, do not mention, explicitly nor implicitly, religion of any kind.  (Dkt. No. 1, Attachs. 2, 4.)  That is, although Plaintiff alleges that the Mask Mandates somehow coerced compliance with certain religious beliefs, he has put forth no factual allegations that could possibly support such a conclusion.  Therefore, Plaintiff's conclusory allegations are insufficient to state a claim for violation of the Establishment Clause.

"The Free Exercise Clause protects both an individual's private right to religious belief and the performance of (or abstention from) physical acts that constitute the free exercise of religion, including assembling with others for a worship service." *Agudath Israel of Am. v. Cuomo*, 983 F.3d 620, 631 (2d Cir. 2020) (internal quotation marks and citations omitted). The protections of the Free Exercise Clause do not, however, "relieve an individual of the obligation to comply with a valid and neutral law of general applicability." *Agudath,* 983 F.3d at 631 (internal quotation marks and citation omitted).  Accordingly, alleged violations of "the free exercise of religion are subject to rational basis review if they are neutral and generally applicable." *Fradys v. Rondeau*, No. 21-CV-7891, 2022 WL 1289674, at *3 (S.D.N.Y. Apr. 29,

2022) (citing *Agudath*, 983 F.3d at 631).)

Here, the Mask Mandates applied irrespective of an individual's religious beliefs and, therefore, were neutral and generally applicable and are subject to rational basis review.[13]  As has already been established, there was a rational basis for the requirement that teachers, students, and visitors in Sauquoit Valley Central schools wear masks; namely, that mask-wearing was an attempt to slow the spread of COVID-19.  *Delaney v. Baker*, 511 F. Supp. 3d 55, 74 (D. Mass. 2021).  Therefore, the Mask Mandates passing muster under rational basis review, Plaintiff has not plausibly alleged that his right to religious exercise was infringed and his fifteenth cause of action must be dismissed as against the County Defendants.

### 3.      Qualified Immunity

Even if Plaintiff's Section 1983 claims were not dismissed on the merits, the individual County Defendants argue that they are immune from liability on qualified immunity grounds because they "were merely enforcing State and County laws that were in effect at the time (and also considered constitutional)."  (Dkt. No. 28, Attach. 1 at 13-16.)  Plaintiff contends that the

---

[13]   Plaintiff's reliance on *Tandon v. Newsom*, 593 U.S. 61 (2021), and *Fulton v. City of Philadelphia*, 141 S.Ct. 1868 (2021), as authority for his argument that the Mask Mandates were not facially neutral is misplaced for two reasons.  First, neither case has anything to do with mask mandates; *Tandon* involved restrictions on private gatherings that unconstitutionally burdened religious gatherings more than secular gatherings and *Fulton* has nothing at all to do with COVID-19, but, rather, with discrimination against religious adoption agencies.  593 U.S. at 62-65; 141 S. Ct. 1874-82.  Thus, neither case is useful to the analysis of the facial neutrality of a mask mandate.  Second, the Mask Mandates are neutral because their object was not to infringe upon individuals' free exercise and was not selectively imposed to burden only conduct motivated by religious belief.  *See Delaney v. Baker*, 511 F. Supp. 3d 55, 73-74 (D. Mass. 2021) (holding that a Massachusetts mask mandate was facially neutral for the same reasons).  The secular exemptions for persons medically unable or too young to safely wear masks does not, as Plaintiff suggests (Dkt. No. 37 at 21), make the Mask Mandates subject to strict scrutiny. *Delaney*, 511 F. Supp. 3d at 73-74 (exemption in mask mandates for those five year of age or younger did not upset facial neutrality).  Accordingly, neither case is instructive here.

County Defendants are not entitled to qualified immunity because the County Defendants did not have the "authority" to "issue health orders," "prevent people from entering public accommodations unless they put on a emergency use authorized (EUA) medical device," or "to require anyone to use medical devices that are only authorized for emergency use."  (Dkt. No. 37 at 11-12.)  Plaintiff also contends that the County Defendants "forfeited qualified immunity" because they had "the luxury of time to consider the legality" of their actions.  (*Id.* at 12.)  Finally, Plaintiff argues that Picente and Maciol "forfeit" qualified immunity because their conduct "creat[ed] supervisory liability." (*Id.* at 13.)  The Court agrees with the County Defendants.

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks and citation omitted).  "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (citation omitted).  A case directly on point is not required, however, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

Additionally, a state actor is entitled to qualified immunity "when it was objectively reasonable for the state actor to believe that his conduct did not violate a clearly established right." *Trapani v. Annucci*, No. 9:21-CV-681, 2022 WL 7290107, at *13 (N.D.N.Y. June 21, 2022), *report and recommendation adopted*, No. 9:21-CV-681, 2022 WL 4008027 (N.D.N.Y. Sept. 1, 2022) (citing *Manganiello v. City of New York*, 612 F.3d 149, 165 [2d Cir. 2010]).

Qualified immunity "affords government officials 'breathing room' to make reasonable — even if sometimes mistaken — decisions." *Distiso v. Cook*, 691 F.3d 226, 240 (2d Cir. 2012) (quoting *Messerschmidt v. Millender*, 565 U.S. 535, 553 [2012]).  "The qualified immunity standard is forgiving and protects all but the plainly incompetent or those who knowingly violate the law."  *Grice v. McVeigh*, 873 F.3d 162, 166 (2d Cir. 2017) (internal quotation marks and citation omitted).

Qualified immunity may be asserted on a 12(b)(6) motion, but a "more stringent standard [is] applicable." *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004).  That is, "the facts supporting the defense [must] appear on the face of the complaint." *McKenna,* 386 F.3d at 436 (citation omitted).  "But '[w]here the nonexistence of a constitutional right may be discerned from the face of the complaint, an official defendant sued in his individual capacity may be granted a dismissal on the ground of qualified immunity pursuant to Rule 12(b)(6).'" *Mongielo*, 2023 WL 2307887, at *19 (quoting *Vincent v. Yelich*, 718 F.3d 157, 166 [2d Cir. 2013]).

Here, as discussed above, Plaintiff has failed to plausibly allege "the violation of a constitutional right — let alone that the unlawfulness of the defendants' conduct was clearly established at the time." *Id.* at *20 (internal quotation marks and citation omitted).  Indeed, even if the County Defendants had violated any of Plaintiff's constitutional rights, the County Defendants were merely enforcing presumptively valid Mask Mandates that had not been deemed unconstitutional — Plaintiff has not, and cannot, point to any precedent that existed *at the time of the County Defendants' actions* that "placed the statutory or constitutional question beyond debate." *Ashcroft*, 563 U.S. at 741.  Therefore, the individual County Defendants

26

would, ultimately, also be entitled to qualified immunity.

### C.   The District Defendants' Motion

#### 1.   Conclusory Allegations

The District Defendants request that Plaintiff's claims be dismissed "where he does not plead nonconclusory facts."  (Dkt. No. 6, Attach. 6 at 3.)  Plaintiff argues that the District Defendants' contention is "utterly groundless and deeply ironic since it is [they] who [are] making a naked assertion[, because they offer] a single sentence claiming that [Plaintiff's] claims fail these tests with zero citation of anything specific to [Plaintiff's] complaint."  (Dkt. No. 21 at 5.)  Plaintiff is correct; the District Defendants' argument is nothing but conclusory and offers no guidance or argument as to what claims they deem insufficient.  Nevertheless, any claims raised by Plaintiff that rely solely on conclusory allegations shall be dismissed for that reason.

#### 2.   First Amendment

The District Defendants argue that Plaintiff's First Amendment claim is meritless because the Mask Mandates were "imposed regardless of a person's planned religious expression . . . and regardless of whether a person even planned to engage in religious expression and, therefore, passes muster under rational basis review."[14]  (Dkt. No. 6, Attach. 6 at 6-8.)  Plaintiff contends that the Mask Mandates are subject to strict scrutiny and violated the First Amendment because they contained exemptions for persons under the age of two and those unable to wear masks for documented medical reasons.  (Dkt. No. 21 at 9-13.)

---

[14]   The District Defendants also argue that the Mask Mandates did not violate Plaintiff's free speech rights.  (Dkt. No. 6, Attach. 6.)  As explained above, *see supra* Part IV.B.2.iii, n.11, the Complaint cannot reasonably be read to contain a Section 1983 free speech claim.

27

For the same reasons that the First Amendment claim must be dismissed against the County Defendants, it must also be dismissed against the District Defendants — i.e., the Mask Mandates, including their exception for persons physically unable to wear masks, were neutral and generally applicable.  *See supra* Part IV.B.2.iii.  Therefore, Plaintiff's fifteenth cause of action is dismissed.

### 2.    Procedural Due Process

The District Defendants contend that Plaintiff did not have "a protected property or liberty interest in attending board of education meetings without wearing a facemask — or if he did, it was de minimis at best."  (Dkt. No. 6, Attach. 6 at 9.)  Plaintiff argues that he had the "right to refuse experimental medical interventions."  (Dkt. No. 21 at 13-15.)

For the same reasons that the procedural due process claim must be dismissed against the County Defendants, it must also be dismissed against the District Defendants — i.e., the Mask Mandates cannot be subject to a due process challenge because they were legislative in nature.  *See supra* Part IV.B.2.i.  Therefore, Plaintiff's first cause of action is dismissed.[15]

### 3.    Substantive Due Process

The District Defendants argue that the substantive due process claim fails to survive strict scrutiny because "none of the allegations of the [c]omplaint supply the 'egregious' conduct that is 'shocking to the contemporary conscience' as needed for a substantive due process violation."  (Dkt. No. 6, Attach. 6 at 10 (citation omitted).)  Plaintiff contends that the District Defendants' arguments are made without "offering any evidence on the record to

---

[15]  The Court need not, and does not, reach the District Defendants' argument regarding the availability of a post-deprivation remedy under Article 78 of the New York Civil Practice Law and Rules.  (Dkt. No. 6, Attach. 6 at 9.)

substantiate the need for the face mask."  (Dkt. No. 21 at 16.)

Although the District Defendants have taken the position that the Mask Mandates survive strict scrutiny, they are not subject to such standard and must merely survive rational basis review.  *See Franklin Square*, 568 F. Supp. 3d at 288 (applying rational basis review to mask mandates).  And, as explained above, *see supra* Part IV.B.2.ii, the Mask Mandates survive rational basis review because they were rationally related to the legitimate state interest of controlling the spread of COVID-19.  Therefore, the sixth and seventh causes of action are dismissed.

### 4.    Equal Protection

The District Defendants contend that Plaintiff's equal protection claim fails as a matter of law because "there is neither an allegation that Plaintiff was treated less favorably than another class of attendees, nor that he was singled out for unfavorable treatment."  (Dkt. No. 6, Attach. 6 at 10.)  Plaintiff responds that those not exempted from the Mask Mandates were not afforded equal protection under the law because "[t]he sick and infants have a right to refuse an experimental medical device, but the healthy must partake in something that could be dangerous to their health."  (Dkt. No. 21 at 15-17.)

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. Amend. XIV, § 1.  Thus, "[t]he Equal Protection Clause requires that the government treat all similarly situated people alike."  *Harlen Assocs. v. Incorporated Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001) (citing *City of Cleburne*, 473 U.S. at 439).  If the law at issue "neither burdens a fundamental right nor targets a suspect class," the Court will uphold a "classification

so long as it bears a rational relation to some legitimate end" — a "highly deferential" rational-basis review which presumes that the law is constitutional. *Winston v. City of Syracuse*, 887 F.3d 553, 560 (2d Cir. 2018) (citations omitted).  The burden is on the challenger "to negative every conceivable basis which might support" the law. *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 364 (1973) (citation omitted).

As discussed above, the Mask Mandates did not burden any of Plaintiff's fundamental rights.  And Plaintiff has not sufficiently pleaded that the Mask Mandates targeted a suspect class.  Plaintiff merely alleges that he and other "non[-]consenting healthy people" were treated differently than other "healthy" persons "based on an individual's willingness or ability to subject themselves to ineffective medical intervention."  (Compl. ¶¶ 175-77.)  "Non-consenting people" are not a suspect or quasi-suspect class, the Mask Mandates were rationally related to a legitimate state interest, and, therefore, the Mask Mandates survive rational basis review. Accordingly, Plaintiff's fourth cause of action must be dismissed.

### 5.   42 U.S.C. § 1985

The District Defendants contend that Plaintiff's Section 1985 claim fails for lack of an underlying constitutional violation and because "there are no non-conclusory allegations of a concerted plan and coordination of effort to deprive [Plaintiff] of his constitutional rights." (Dkt. No. 6, Attach. 6 at 10.)  Plaintiff argues that, in the Complaint, he "made the statement . . . 'the conspiratorial purpose was financial,'" and then provided "support" for this conclusion in paragraphs 137-145 of the complaint.  (Dkt. No. 21 at 15.)

To state a Section 1985 claim "a plaintiff must allege: 1) a conspiracy; 2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection

of the laws, or of equal privileges and immunities under the laws; and 3) an act in furtherance of the conspiracy; 4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Gray v. Town of Darien*, 927 F.2d 69, 73 (2d Cir. 1991). "[A] plaintiff must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003) (internal quotation marks and citations omitted). "Furthermore, the conspiracy must also be motivated by 'some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action.'" *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999) (citation omitted); *see also Bones v. County of Monroe*, No. 23-CV-06201, 2023 WL 8809732, at *9 (W.D.N.Y. Dec. 20, 2023) (quoting *Palmieri v. Lynch*, 392 F.3d 73, 86 [2d Cir. 2004] ["Plaintiff's Section 1985 claim fails because Plaintiff fails to allege 'some racial or [ ] otherwise class-based, invidious discriminatory animus behind the conspirators' action.'"]).

Plaintiff fails to allege any factual basis to support a meeting of the minds between defendants to achieve an unlawful end and, further, fails to allege that defendants acted with an invidious discriminatory animus to deprive him of constitutionally protected rights. The Complaint alleges, in a conclusory manner, that the District Defendants crafted the SVCSD reopening plan to include a masking requirement for individuals on school grounds "in order to be in compliance with the New York State ARP ESSER FUND Plan funding requirements." (Compl. ¶¶ 137-143.) Ostensibly, the connection that Plaintiff would like the Court to make is that Defendants conspired to include a masking requirements in the Mask Mandates, not for the purpose of protecting individuals on school grounds, but to obtain certain funding.

31

However, Plaintiff fails to allege facts plausibly suggesting that such conspiracy was *motivated by* a class-based, invidious discriminatory animus, or that it was for the purpose of depriving him of his constitutional rights. *See Wik v. Village of Holley*, No. 22-CV-6414, 2023 WL 6958794, at *7 (W.D.N.Y. Oct. 20, 2023) ("Requiring an invidiously discriminatory motive as an element of a § 1985(3) conspiracy prevents the statute from acting as a 'general federal tort law' applying to all allegedly tortious conspiratorial interferences with the rights of others.") Indeed, Plaintiff explicitly alleges that the *purpose* of the conspiracy was to "secure millions of dollars from the federal government," (Compl. ¶ 147), not to violate his rights — any violation of Plaintiff's constitutional rights were, therefore, merely collateral. For these reasons, the second cause of action must be dismissed.[16]

### 6.    Qualified Immunity

For the same reasons that the individual County Defendants would be entitled to qualified immunity, so too would the individual District Defendants.[17] *Fed. R. Civ. P. supra*

---

[16]   To the extent that Plaintiff has articulated *Monell* municipal liability claims against the County and SVCSD, such claims fail for lack of an underlying constitutional violation. *Monell* liability requires the existence of an "underlying constitutional violation." *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006); *see also Claudio v. Sawyer*, 675 F. Supp. 2d 403, 408 (S.D.N.Y. 2009), *aff'd*, 409 F. App'x 464 (2d Cir. 2011) ("Under Second Circuit case law, however, a prerequisite to municipal liability under *Monell* is an underlying constitutional violation by a state actor."). Dismissal of the substantive claims against the individual actors, therefore, mandates dismissal of any *Monell* claims. *See Demosthene v. City of New York*, 831 F. App'x 530, 534 n.3 (2d Cir. Oct. 9, 2020) ("[I]n light of the absence of an underlying constitutional violation, the district court correctly dismissed the claim against the [c]ity pursuant to [*Monell*.]").

[17]   SVCSD, however, would not be entitled to qualified immunity — although, the claims against it are dismissed for other reasons. The District Defendants argue that municipalities "though not eligible to assert qualified immunity, still can raise a defense of good-faith reliance on existing law to a constitutional claim." (Dkt. No. 6, Attach. 6 at 5.) To support this argument, District Defendants rely on Ninth Circuit caselaw that upsets the well-

Part IV.B.3.

### D.    State Law Claims

Defendants request that, in the event all of the federal claims against them are dismissed, as they have been, the Court decline to exercise supplemental jurisdiction over the state law claims.  (Dkt. No. 6, Attach. 6 at 12; Dkt. No. 28, Attach. 1 at 19.)  Plaintiff requests that the Court retain jurisdiction over his state law claims.  (Dkt. No. 21 at 19; Dkt. No. 37 at 25.)

Where a district court dismisses all claims over which it had original jurisdiction, the court may, in its discretion, decline to exercise supplemental jurisdiction over remaining state law claims.  28 U.S.C. § 1367(c)(3).  "It is well settled that where, as here, the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over remaining state law claims." *Klein & Co. Futures, Inc. v. Bd. of Trade of N.Y.*, 464 F.3d 255, 262 (2d Cir. 2016) (citation omitted).  The decision whether to exercise pendent jurisdiction is a discretionary one, and its justification "'lies in considerations of judicial economy, convenience and fairness to litigants[.]'" *Est. of Devins v. Oneida Cnty.*, No. 6:21-CV-0802, 2022 WL 4549228, at *22 (N.D.N.Y. Sept. 29, 2022) (quoting *United Mine*

---

established rule that municipalities are not entitled to qualified immunity — drawing a distinction between "good-faith constitutional violations" and the doctrine of qualified immunity.  *Allen v. Santa Clara Cnty. Corr. Peace Officers Ass'n*, 38 F.4th 68, 72-73 (9th Cir. 2022).  The Court is not persuaded to follow such ruling and the District Defendants have provided no binding authority that provides such "good-fath reliance" defense for municipalities.  (Dkt. No. 6, Attach. 6 at 5-6.)  Although Plaintiff has failed to make out a constitutional claim against any of the defendants, and such claims are dismissed, the Court notes that the municipal Defendants, SVCSD, and the County, would not be entitled to qualified immunity or a "defense of good-faith reliance" (which appears to be, practically, nothing short of qualified immunity).  *See Vassallo v. Lando*, 591 F. Supp. 2d 172, 198 n.21 (E.D.N.Y. 2008) ("Municipalities, including school districts, 'are not entitled to qualified immunity for their actions, even where the individual officers who acted on the municipality's behalf would be.'") (quoting *Skehan v. Village of Mamaroneck*, 465 F.3d 96, 109 [2d Cir.2006]).

*Workers of Am. v. Gibbs*, 383 U.S. 715, 726 [1966]).

All of Plaintiff's federal claims against Defendants are dismissed for the reasons

herein.[18]  Having carefully considered the relevant factors, the Court finds that they weigh

decidedly in favor of declining to exercise supplemental jurisdiction over Plaintiff's remaining

state law claims.  Therefore, the following causes of action are dismissed, to the extent that they

consist of a state law claim, without prejudice to refiling in New York State Court pursuant to

28 U.S.C. § 1367(d) and New York State law: first cause of action (alleging, in part, New York

State constitutional violations); fifth cause of action (alleging, in part, New York State

constitutional violations); tenth cause of action (alleging common-law negligence), eleventh

cause of action (alleging common-law conspiracy); twelfth cause of action (alleging Intentional

Infliction of Emotional Distress); and thirteenth cause of action (alleging fraud by omission or

non-disclosure).[19]

---

[18]  Although neither the County Defendants nor the District Defendants explicitly moved to dismiss Plaintiff's fourteenth cause of action, brought pursuant to 42 U.S.C. § 2000a, said claim must be dismissed because Plaintiff has failed to allege discrimination on the basis of a protected characteristic.  *See, e.g.*, *Fradys v. Rondeau*, No. 21-CV-7891, 2022 WL 16856252, at *2 (S.D.N.Y. Nov. 10, 2022), *appeal dismissed*, No. 22-3045, 2023 WL 3719040 (2d Cir. May 5, 2023) ("[T]he plaintiff has alleged only that he was denied entry to the gym because of his refusal to wear a mask, but not on the basis of membership in any protected class.  As a result, the plaintiff has failed to state a claim under the Civil Rights Act of 1964.")  Additionally, the Section 2000a claim must be dismissed because there is no relief available to Plaintiff thereunder; a plaintiff cannot recover damages under Title II of the Civil Rights act—only injunctive relief can be attained—and Plaintiff's requests for injunctive relief are moot.  *See Zinman*, 2023 WL 2669904, at *4 (quoting *Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400, 401-02 [1968] [per curiam] ["'A Title II suit is . . . private in form only.  When a plaintiff brings an action under that Title, he cannot recover damages.'"]).

[19]  The Court need not, and does not, reach the County Defendants' argument that Plaintiff's state law claims must be dismissed for failure to comply with conditions precedent to commencing a lawsuit.  (Dkt. No. 28, Attach. 1 at 20.)

###### E.   Fed. R. Civ. P.  12(f)

As part of their motions to dismiss, the District Defendants and the County Defendants have also moved to strike the complaint, or portions thereof, pursuant to Fed. R. Civ. P. 12(f). (Dkt. No. 6, Attach. 6 at 12-13; Dkt. No. 28, Attach. 1 at 12.)

Rule 8 requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The Court has the power to strike portions of or outright dismiss a complaint that "does not comply with the requirement that it be short and plain." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) (citing Fed. R. Civ. P. 12[f]).  "However, violations of Rule 8 are found only in extreme circumstances." *A.S. v. City Sch. Dist. of Albany*, 585 F. Supp. 3d 246, 266, n.7 (N.D.N.Y. 2022) (collecting cases). And dismissal pursuant to Fed. R. Civ. P. 12(f)  "is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Salahuddin*, 861 F.2d at 42 (citation omitted).

Although the compliant comprises seventy-eight pages, exclusive of exhibits, it is not "so confused, ambiguous, vague, or otherwise unintelligible" so as to create an "extreme circumstance" where dismissal pursuant to Fed. R. Civ. P. 12(f) is warranted.  *A.S.*, 585 F. Supp. 3d at 266, n.7; *Salahuddin*, 861 F.2d at 42.  Regardless, because the Court has granted the motions insofar as they request dismissal pursuant to Fed. R. Civ. P. 12(b)(6), it need not further analyze whether dismissal or striking pursuant to Fed. R. Civ. P. 12(f) is appropriate.

###### F.   Plaintiff's Motion for Sanctions

After briefing on the motions to dismiss was complete, Plaintiff moved for sanctions against the County Defendants' counsel, pursuant to Fed. R. Civ. P. 11.  (Dkt. No. 47.)  Plaintiff

requests that counsel be sanctioned because the County Defendants have tried to "enter facts into the record that are not integral to this case." (*Id.* at 3.) Plaintiff claims that sanctions are warranted because, among other accusations, the County Defendants have not proven the existence of COVID-19 and because counsel has presented "the concept of masking as a means of protecting people [as] an undisputed fact" but "Dr. Anthony Fauci couldn't provide any studies regarding the efficacy of masks in regard to respiratory viruses according to lawyers representing plaintiffs in a case against the federal government." (*Id.* at 4-7.) The County Defendants request, through a separate letter-motion, that Plaintiff's motion for sanctions be denied, either because the arguments therein are duplicative of those as Plaintiff's motions to strike, or for the reasons set forth in the County Defendants' opposition to Plaintiff's motions to strike. (Dkt. No. 49.)

"A . . . motion violates Rule 11 if it is frivolous, legally unreasonable, or factually without foundation, even though not signed in subjective bad faith." *Toussaint v. NY Dialysis Servs., Inc.*, 230 F. Supp. 3d 198, 221 (S.D.N.Y. 2017), *aff'd*, 706 F. App'x 44 (2d Cir. 2017) (internal quotation marks and citations omitted). "A filing is frivolous if it is 'clear under existing precedents that there is no chance of success and no reasonable argument to extend, modify or reverse the law as it stands.'" *Toussaint.* 230 F. Supp. 3d at 221 (quoting *Simon DeBartolo Grp., L.P. v. The Richard E. Jacobs Grp., Inc.*, 186 F.3d 157, 167 [2d Cir. 1999]). The imposition of Fed. R. Civ. P. 11 sanctions is within the district court's discretion. *Perez v. Posse Comitatus*, 373 F.3d 321, 325 (2d Cir. 2004).

Plaintiff has not presented legally sufficient justification to sanction the County Defendants' counsel pursuant to Fed. R. Civ. P. 11 and, therefore, his motion for sanctions is

denied.

### G.    Plaintiff's Motions to Strike

Plaintiff has moved to strike the County Defendants' motion to dismiss (Dkt. No. 40),

and, thereafter, filed an "amended" motion to strike which contains minor substantive changes

(Dkt. No. 43).  Plaintiff's motions to strike do little more than re-hash arguments from

Plaintiff's opposition to defendants' motions to dismiss; namely, that defendants did not file

affidavits in support of the motions, that defendants introduced evidence "outside the record,"

and various arguments related to Plaintiff's skepticism regarding the existence of COVID-19

and the efficacy of face masks and vaccination.  (Dkt. Nos. 40, 43.)[20]

A party must move to strike "either before responding to the pleading or, if a response is

not allowed, within 21 days after being served with the pleading."  Fed. R. Civ. P. 12(f)(2).  The

County Defendants' motion to dismiss was filed on November 21, 2022 (Dkt. No. 28);

however, Plaintiff did not file his motion to strike until February 2, 2023 (Dkt. No. 40).  For this

reason, Plaintiff's motion to strike is denied as untimely.

In addition to being untimely, Plaintiff's motion to strike is, at least in part, moot.  The

Court has refused to consider the exhibits attached to the County Defendants' motion, *see supra*

Part IV.B, n.5, and, therefore, Plaintiff's request that such evidence be disregarded has already

been answered in the affirmative and need not be discussed further.

As for Plaintiff's request that the motion to dismiss be stricken because the County

Defendants did not submit supporting affidavits, the County Defendants have conceded that

---

[20]  Plaintiff's contention that the County Defendants' motion to dismiss violates various
subsections of Fed. R. Civ. P.  56 (Dkt. No. 43 at 1-2) will not be considered, because Fed. R.
Civ. P.  56 governs motions for summary judgment.

their motion to dismiss was made pursuant to only Fed. R. Civ. P. 12(b)(1) and (6).  (Dkt. No. 39 at 2.)  A motion pursuant to Fed. R. Civ. P. 12(b)(6) need not be accompanied by an affidavit.  N.D.N.Y. L.R. 7.1(b)(2)(A).  And, while an affidavit may be necessary to support certain 12(b)(1) motions (for example, to show that the elements of diversity jurisdiction have not been met), an affidavit is not explicitly required to accompany all Fed. R. Civ. P. 12(b)(1) motions.  N.D.N.Y. L.R. 7.1.(b).  Regardless, the County Defendants' motion is granted solely on Fed. R. Civ. P. 12(b)(6) grounds, because Plaintiff's state law claims are dismissed pursuant to 28 U.S.C. § 1367(c)(3), not Fed. R. Civ. P. 12(b)(1).  *See supra* Part IV.D.

Finally, as for the balance of the motion to strike, Plaintiff requests that the motion be stricken because of his variety of disagreements with defendants' characterization of COVID-19 and regarding the existence of COVID-19.  (Dkt. No. 43 at 6-10.)  However, neither the existence of COVID-19, nor the effectiveness of face masks in preventing its spread, are at issue here.  And, regardless, faithful to the applicable motion to dismiss legal standards, Plaintiff's allegations are accepted as true for purposes of the pending motions; there are no "disputed" facts at this procedural posture.

Plaintiff's concerns having been addressed and the County Defendants' motion to dismiss having been found to be meritorious and contain no "insufficient defense or any redundant, immaterial, impertinent, or scandalous matter," Plaintiff's motion to strike is denied. Fed. R. Civ. P. 12(f).

### H.  Leave to Amend

The Federal Rules of Civil Procedure provide that "[t]he court should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "A pro se complaint 'should not

[be] dismiss[ed] without [the court's] granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.'" *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (quoting *Branum v. Clark*, 927 F.2d 698, 705 [2d Cir. 1991]).  If amendment would be "futile," leave to amend may properly be denied.  *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Plaintiff's first, fifth, eighth, fourteenth, and fifteenth causes of action are dismissed with prejudice, because they are either incognizable claims and/or amendment to such claims would be futile.  However, this is not the case with regard to balance of Plaintiff's claims (specifically, his second, third, fourth, sixth, seventh, ninth, tenth, eleventh, twelfth, and thirteenth causes of action).  As a result, Plaintiff will be granted thirty (30) days in which to correct the pleading defects identified in those claims, through filing an Amended Complaint.

<u>Plaintiff is respectfully reminded that, as indicated in Local Rule 15.1(a) of the Local Rules of Practice for this Court, any such Amended Complaint will supersede and replace the existing Complaint in all respects, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any portion of his original Complaint or any document previously filed with the Court.  Nor may that Amended Complaint attempt to reassert any claims that have been dismissed with prejudice (specifically, his first, fifth, eighth, fourteenth, or fifteenth causes of action)</u>.

**ACCORDINGLY**, it is

**ORDERED** that the District Defendants' motion to dismiss (Dkt. No. 6) is **<u>GRANTED in part</u>**, and the County Defendants' motion to dismiss (Dkt. No. 28) is **<u>GRANTED in part</u>**, such that the following claims in Plaintiff's Complaint (Dkt. No. 1) are **<u>DISMISSED</u>**:

(1) Plaintiff's first, fifth, eighth, fourteenth, and fifteenth causes of action are

**DISMISSED** **with prejudice**;

(2) Plaintiff's second, third, fourth, sixth, seventh, ninth, tenth, eleventh, twelfth,

and thirteenth causes of action **shall be DISMISSED unless**, within **THIRTY**

**(30) DAYS** of the date of this Decision and Order, Plaintiff files an **AMENDED**

**COMPLAINT** curing the pleading defects identified in those claims; and it is

further

ORDERED that, in the event that Plaintiff does not file an Amended Complaint within

**THIRTY (30) DAYS** of the date of this Decision and Order, the Clerk is directed to **CLOSE**

this case without further Order of the Court; and it is further

ORDERED that Plaintiff's motion for sanctions (Dkt. No. 47) is **DENIED**; and it is

further

ORDERED that Plaintiff's motions to strike (Dkt. Nos. 40, 43) are **DENIED**; and it is

further

ORDERED that the County Defendants' letter-motion (Dkt. No. 49) is **GRANTED** to

the extent it requests the denial of Plaintiff's motion for sanctions.

Date:   March 22, 2024
        Syracuse, New York

Glenn T. Suddaby
U.S. District Judge